Jana L. HALEY, Appellant–Petitioner,

v.

Kent E. HALEY, Appellee–Respondent.

No. 87A01–0110–CV–392.

Court of Appeals of Indiana.

July 18, 2002.

745

Kelly A. Lonnberg, Bowers Harrison, LLP, Evansville, IN, Attorney for Appellant.

Frank R. Hahn, Newburgh, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Jana Haley ("Mother") appeals from the trial court's decision to grant Kent Haley's ("Father") Petition to Modify Custody of their daughter, D.H. She presents several issues for our review, which we restate as:

(1) whether the evidence established that a change in custody was justified;

(2) whether the trial court erred in establishing the visitation order;

(3) whether the trial court erred in granting a retroactive child support order following temporary custody being awarded to Father; and

(4) whether the trial court erred in granting the Father attorney fees.

We affirm in part and reverse in part.

A review of the record reveals that D.H. was born on December 19, 1991. Father and Mother subsequently divorced in 1995. At that time, custody of D.H. was awarded to Mother, with Father receiving "liberal visitation with the Child at any mutually agreeable times and places." Appellant's Appendix at 14. The parents also agreed to alternate time with D.H. on major holidays.

After the divorce, Father continued to reside in the marital residence and Mother moved to a home in Princeton, Indiana. Shortly thereafter, Father and Mother agreed that Mother should move from Princeton to Owensville, Indiana, so that D.H. would be in a better school corporation. Mother and D.H. lived in Owensville until their home was damaged in a storm, after which, in October of 2000, Mother and D.H. moved to Patoka, Indiana, to live with Mother's friend, James Whitten, until they could find a new place to live. Mother and D.H. continued to live at that residence in Patoka at least through May of 2001. In December of 2000, Mother, along with her sister, purchased a house in Desoto, Illinois, which is approximately two and one-half hours from Mother and D.H.'s residence in Patoka. Mother testified that she had thought about moving there in the future but had no plans to do so at the time of the hearing. Father testified that he initially learned about Mother's purchase of the house from D.H., who had told him that Mother planned to move there.

During the time that Mother and D.H. lived in Owensville and Patoka, D.H. attended school at Owensville Community School in the South Gibson School Corporation. D.H. is described by her teacher, Ms. Lingus, as "a struggling average student" who has trouble in reading and spelling. Transcript Vol. 1 at 17. D.H. receives extra help at school through the Stars Program and is assisted in her schoolwork by Mother, Father, and her stepmother, Charla, who is a teacher.

Father maintained visitation with D.H. over the years and remained current in his child support. D.H. also spent a considerable amount of time visiting her maternal grandmother and her paternal grandparents, who kept her on Sunday nights after her visitation with Father and took her to school on Monday mornings.

On January 12, 2001, Father filed his Petition to Modify Custody upon the grounds that there had been a change in circumstances. Specifically, he asserted "[t]hat the mother is not a fit and proper person to have the continued care, custody, control and education of the parties' child...." Appellant's App. at 22. Father also filed a Motion for Temporary Change in Custody, which was granted by the trial court on April 4, 2001. The trial court subsequently made the change of custody permanent on August 24, 2001.

## I

### Change in Custody

■ Indiana Code § 31–17–2–21 (Burns Code Ed. Supp.2001) provides that a trial court may not modify a custody order unless the modification is in the best interests of the child and a substantial change has occurred in one or more of the following factors which a court may consider in initially determining custody under Indiana Code § 31–17–2–8 (Burns Code Ed. Supp.2001):

"(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) The child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) [IC 31–17–2–8.5(b) ] of this chapter."

See also Fields v. Fields, 749 N.E.2d 100, 108 (Ind.Ct.App.2001), trans. denied. In pursuing a modification of a custody order, the party seeking the modification bears the burden of demonstrating that the existing custody order is unreasonable. Id. This is so because, as a general proposition, stability and permanence are considered best for the child. Id.

■ The modification of a custody order lies within the sound discretion of the trial court. Spencer v. Spencer, 684 N.E.2d 500, 501 (Ind.Ct.App.1997). Upon appeal, we will reverse a trial court's decision only upon a showing of an abuse of discretion. Id. An abuse of discretion is found when the trial court's decision is clearly against the logic and effect of the facts and circumstances. Id. We do not judge witness credibility nor reweigh the evidence. Id. We consider only the evidence which supports the trial court's decision. Id.

An examination of the record reveals that Father presented several grounds at the hearings conducted on various dates to demonstrate that a substantial change in circumstances had occurred and that a change in custody was in the best interests of D.H. Specifically, Father argued that the lack of certainty regarding his visitation, Mother's changing of residences and moving from town to town, D.H.'s educational needs, D.H.'s interaction with her friends and family members, Mother's animosity toward Father, and Mother's failure to keep Father informed of her changes in residence and purchase of a home in Illinois justified a change in custody.

■ We begin by noting that some of the grounds upon which Father relied are not appropriate for modifying custody under the circumstances. First, Father and Mother's dissolution decree, entered in 1995, permitted that Father have reasonable visitation at mutually agreeable times. It also established that each parent would alternate time with D.H. on holidays. Father claimed that Mother was uncoopera-

tive and would change his visitation at the last minute and that visitation was seldom certain. However, the evidence presented showed that Father generally had visitation every other weekend and at holidays. While we do not reweigh the evidence or determine witness credibility, and therefore make no determination of whether Father's testimony that Mother would change visitation at the last minute was valid, we do note that Mother was not violating a court order by altering the visitation as there was no set schedule for visitation. If Father desired a more definite schedule for visitation, he could have petitioned the court for modification of the visitation order. Generally, lack of cooperation is not an appropriate ground for changing custody. *See Pierce v. Pierce*, 620 N.E.2d 726, 730 (Ind.Ct.App.1993) (noting that cooperation or lack thereof by a parent is not an appropriate ground for changing custody).

Also, Mother and D.H.'s changes of residence occurred because of the separation and divorce of Father and Mother, their subsequent agreement that Mother needed to live in a better school district for D.H.'s education, and damage caused by a tree falling on Mother's home during a storm. None of these grounds for changing residences are appropriately relied upon to change custody in favor of Father.

Be that as it may, there are several grounds upon which Father appropriately relied in seeking a custody modification. At the time of Father and Mother's divorce, D.H. was four years old. In the six years since their divorce, D.H. has started to attend school and has grown into a hardworking, yet struggling student. As D.H. has grown older, it has also become apparent that her needs have changed. Father, who has always been active in D.H.'s life, has also changed his wishes in regard to having custody of D.H. *See Joe v. Lebow*, 670 N.E.2d 9, 26 (Ind.Ct.App. 1996) (concluding that the Father's later desire to have custody, along with other factors, constituted a substantial change for consideration of a petition for modification). These factors are appropriately considered in determining whether a custody modification is permissible and warranted.

D.H.'s educational needs are also an important consideration in modifying custody. Both Father and Mother testified that they help D.H. with her homework, especially those areas in which she has trouble. However, Betty Perry, the Court Appointed Special Advocate ("CASA"), testified that Mother told her that the school would take care of D.H.'s academic difficulties. Both the CASA and Father questioned Mother's commitment to assisting D.H. with her educational needs.[1] Most telling of D.H.'s needs is the testimony of her teacher, Ms. Lingus. Ms. Lingus noted that D.H. had made improvements during the school year. These improvements aside, D.H. still had difficulty in school and needed extra work to continue to improve. As Ms. Lingus further remarked, D.H. usually scored better on her spelling tests when she stayed with Father for the week-

---

1. Mother challenges the testimony of the CASA as being "odd and unsubstantiated." Appellant's Brief at 27. Mother has simply asked us to reweigh the evidence and determine that the CASA was not a credible witness, which we will not do. Nonetheless, we note that the report and testimony of the CASA was determined by the trial court to be weighted in favor of Father and that the trial court took that fact into consideration when making its determination. While we do not make any judgment upon the credibility of the CASA, we think it is highly important to point out that the trial court found apparent bias in the CASA's report, and yet still ruled in favor of Father on his petition for custody modification.

end because they studied her schoolwork for the next week. This evidence demonstrates a substantial change in D.H.'s educational development.

D.H.'s interaction with her family and friends also appropriately takes a role in determining whether a custody modification is appropriate. Outside of school, D.H. does not seem to have any close friends with whom she can play and grow, with the exception of a friend she sees every weekend when she is with Father. While with Mother, it appears that much of D.H.'s time is spent going through the daily routine of waking up, going to day care, going to school, then returning home with little variation added for entertainment or bonding. Further, the CASA testified that she did not feel that there was an appropriate adult-child relationship between Mother and D.H.

There was also testimony before the trial court that Mother had made disparaging remarks about Father to D.H. and that she instructed D.H. not to talk to her stepmother. While the number of incidents related to the trial court were few, there was evidence before the trial court that Mother had acrimonious feelings toward Father. As the CASA testified, much of her interview with Mother was spent with Mother focusing her anger towards Father and, therefore, was not conducive to Mother and the CASA being able to discuss D.H. In such situations, it is appropriate for a trial court to consider a parent's effort to disparage the other parent in modifying custody.[2] *See Needham v. Needham*, 408 N.E.2d 562, 564 (Ind.Ct. App.1980) (holding that the trial court could consider mother's antagonism toward father and mother's attempts to "poison" the father in the children's minds).

Finally, there was evidence before the court that Mother had purchased a house in Illinois and had intentions to move there in the future. While Father, Ms. Jan Dotson of the Gibson County Office of Family and Children, and Mr. Mike Woods, the principal of D.H.'s school, testified that Mother had intentions to move to Illinois as early as January of 2001, Mother testified that she had no immediate intention of moving, but that she might do so in the future. The law is clear that a move to another state is not a per se reason to change custody; however, the circumstances inherent in such a move may be considered. *In re Paternity of Winkler*, 725 N.E.2d 124, 128 (Ind.Ct.App. 2000).

While the parties dispute whether Mother intended to move to Illinois with D.H., a determination upon that issue is not necessary. Rather, the value to the trial court in the testimony regarding Mother's potential move was more likely found in its effect on Mother's credibility. Mother claims that she purchased the home with her sister as an investment, with Mother to make the payments and her sister to be the property manager. However, Mother also testified that she and D.H. were living with her friend because she could not find a home to rent in Owensville or one that she could afford to rent in Evansville. These statements appear to be contradictory and inconsistent, and lead one to question whether Mother did indeed intend to move to Illinois with D.H. in January or at the end of the school year. Based upon this inconsistency in Mother's testimony and the evidence presented by witnesses on behalf of Father, the trial court was within its

---

**2.** The existence and display of such disparagement does not equate to mere lack of cooperation as hereinbefore discussed.

discretion to question Mother's credibility.[3]

Based upon the foregoing evidence, we conclude that the trial court did not err in modifying custody in favor of Father. The evidence reflects that there was a substantial change in several of the factors which the trial court was required to review before making a determination as to the best interests of the child. Once the trial court made that determination, there was ample evidence regarding those factors, and others, which demonstrated that the modification of custody in favor of Father was in the best interests of D.H. We find no abuse of discretion by the trial court.

## II

### *Visitation Order*

Mother also claims that the trial court erred in establishing her visitation schedule asserting that the trial court did not follow the Parenting Time Guidelines ("Guidelines") and that the established visitation was significantly less than Father had enjoyed without a specific order. Mother specifically requests that, in accordance with the Guidelines, she receive visitation for half of the summer break, weekday visitation, visitation over spring break, and extended visitation over the Christmas holiday.

We first note that a review of Indiana law reveals that no case has addressed the question of whether the Guidelines must be applied following a change of custody when the original custody determination was made before the Guidelines became effective. Father claims that the Guidelines are not applicable in such situation.

For support, Father cites *Kaplan v. Cunningham*, 757 N.E.2d 1026, 1029 (Ind.Ct. App.2001), *trans. denied*, in which a panel of this court held that adherence to the Guidelines was not mandatory in cases involving modification of visitation orders which were in existence prior to the date in which the Guidelines went into effect. Father asserts that there is no difference between modifying a visitation order for one parent, and ordering a change in custody and then establishing visitation for the former custodial parent. Father further directs us to *Huffman v. Huffman*, 623 N.E.2d 445 (Ind.Ct.App.1993), *trans. denied*, to support his argument. In *Huffman*, this court held that changes in custody often necessitate changes in visitation, and therefore, the mother in that case should have been aware that a petition to modify custody could result merely in a change in visitation. *Id.* at 448. Father's belief seems to be that because visitation and custody are so closely linked, a modification of custody and a modification of visitation are one in the same.

While we agree that Father has correctly interpreted the holding in *Kaplan*, we disagree with its applicability in this case. The holding in *Kaplan* relied upon the commentary to the Indiana Parenting Time Guidelines, Scope of Application, 1, which states:

"Variance from the Indiana Parenting Time Guidelines does not alone constitute good cause for amendment of an existing visitation order; however, a court or parties to a proceeding may refer to these guidelines in making

---

**3.** We do not make any determination regarding Mother's credibility, nor can we be certain that the trial court questioned Mother's credibility. We address this issue solely to recognize that the trial court assesses the credibility of a witness and that the trial court assigns the appropriate weight to the witness's testimony. However, as the reviewing court, we also examine the record to determine whether there is support for the trial court's decision.

changes to a parenting time order after the effective date of the guidelines."

*See also Kaplan,* 757 N.E.2d at 1028–29.

■ As did the *Kaplan* court, we interpret this language to mean that it is permissive to apply the Guidelines when modifying a visitation · order which preexisted the date when the Guidelines became effective. While the custody and visitation order in this case was entered before the Guidelines went into effect, the similarity between *Kaplan* and this case ends there. The commentary quoted above speaks specifically of modifying visitation orders. It seems that the rationale underlying the commentary is to prevent a flood of cases from parents seeking modification of visitation schedules based solely upon their variance from the Guidelines. Nonetheless, that concern is not realized with a petition for change of custody.

While a change in visitation may be linked through necessity to a change in custody, a change in custody is not so easily disguised as a modification of visitation. Indeed, they are two separate actions by the trial court, which are controlled by separate statutory authority and do not require the parties to make identical showings in order to grant the petition. Rather, a change in custody is more akin to an original custody determination than a modification of visitation.

By definition, a change in custody cannot take place unless the trial court determines that there has been a substantial change in the factors listed in I.C. § 31–17–2–21 and that the change in custody would be in the child's best interests. In contrast, a modification of a visitation order may be effected solely upon the showing that a modification is in the best interests of a child. Ind.Code § 31–17–4–2 (Burns Code Ed. Repl.1997).

■ Even though, as this court said in *Huffman,* a custody·modification will often necessitate a change in visitation, it cannot be said that the potential effects of a change in custody on the well-being of a child will be the same as that from a modification of visitation. When ordering a change in custody, the trial court must enter a new support order, and every detail which had been previously implemented must be evaluated and replaced with a new set of rules, specific to the situation, which allows the parents to fulfill the needs of the child. A change in custody is not an act which requires the trial court to tweak an existing order by making a slight adjustment in the days one parent gets to visit with the child, or determine that weeknight visitation no longer is feasible because of a conflict with after-school activities. Instead, the change in custody results in the child being removed from one home and placed in another. The child's daily life will change with the adaptation to the new permanent surroundings and the various rules and strictures placed upon the child. It is the potential impact on the child from these changes which requires the showing of a substantial change in conditions before a trial court may entertain the request to change custody. It is also these reasons which demonstrate the similarity between a change in custody and the entering of an original custody decree, which is subject to the Guidelines. Consequently, we hold that the Guidelines are applicable to a change in custody, even if the original custody determination was made before the Guidelines went into effect.

Father also asserts that the awarded visitation does closely follow the Guidelines, and further, that because there had been a substantial change in circumstances to warrant a modification of custody, the trial court's decision to award Mother less visitation than Father enjoyed was not un-

fair to Mother. Once again, Father's argument is unpersuasive.

■ While Father's assertion that the "award actually entered by the trial court . . . does not differ greatly from the guidelines" is true, Appellee's Brief at 18, it is the fact that this statement is true which mandates that the Guidelines be applied. The Guidelines state that there is a presumption that they are applicable in all cases covered by the Guidelines. Ind. Parenting Time Guidelines, Scope of Application, 2. Therefore, we must start with the proposition that any visitation order established by the trial court should mirror the Guidelines. However, while we may start with that proposition, it is only a presumption, one which may be overcome by the facts particular to the circumstances. According to the Guidelines, before a trial court may enter a visitation order which deviates from the model contained in the Guidelines, the trial court must provide a written explanation for the deviation. Parenting Time G., Scope of App., 2. While the commentary to the Scope of Application states that a written explanation need not be as in depth as findings of fact or conclusions of law, in the present case, the trial court offered no written explanation of its determination. Accordingly, we are unable to give appropriate review to the visitation order in light of the Guidelines which we hold to be applicable. Therefore, we remand to the trial court to enter a visitation order which either mirrors the Guidelines or to provide the parties with an order explaining the deviation from the Guidelines.

### III

### *Retroactive Support Order*

■ Mother challenges the retroactive child support order entered following the final determination of custody modification. The modification order entered by the trial court on August 24, 2001, required that Mother pay $59.41 per week, effective May 18, 2001. Mother asserts that the trial court could not make the support order retroactive because of the order which the trial court entered granting Father temporary custody on April 4, 2001. In its order granting Father temporary custody, the trial court stated that Mother was "not required to pay support at this time." Appellant's App. at 30.

■ Decisions regarding child support rest within the sound discretion of the trial court. *Beehler v. Beehler*, 693 N.E.2d 638, 640 (Ind.Ct.App.1998). We will reverse only for an abuse of discretion or if the trial court's determination is contrary to law. *Id.* A trial court has the discretionary power to make a modification for child support relate back to the date the petition to · modify is filed, or any date thereafter. *Id.* at 641; *Smith v. Mobley*, 561 N.E.2d 504, 508 (Ind.Ct.App.1990), *trans. denied.* The right to support lies exclusively with the child and the custodial parent holds the support in trust for the benefit of the child. *In re Hambright*, 762 N.E.2d 98, 101 (Ind.2002).

While it is true that the trial court did not order Mother to pay support to Father for D.H.'s benefit when Father was awarded temporary custody, the order did not preclude the trial court from retroactively awarding support as the court later did in this case. Father sought support when filing his petition for custody, but it was not granted at that time. When the final custody order was entered by the court, the trial court did order Mother to pay support from a date preceding the date the final order was entered. However, this date was over one month after Father had obtained temporary custody and approximately four months after Father had filed his petition for custody. Because the law

is clear that a trial court may order support retroactively to any date from the filing of the petition to modify support, and because Father had temporary custody at the time the support was to begin, the trial court did not abuse its discretion in entering a retroactive child support order.

## IV

### Award of Attorney Fees

Mother finally challenges the trial court's order that she pay Father's attorney fees of $4,478.70, one-half within thirty days of the order and the balance within sixty days. According to Indiana Code § 31–17–7–1 (Burns Code Ed. Repl. 1997),[4] the court may order a party to pay a reasonable amount for the cost of the other party maintaining an action for custody modification and for attorney fees and mediation services. The trial court has broad discretion in awarding attorney fees. *In re Marriage of Bartley*, 712 N.E.2d 537, 546 (Ind.Ct.App.1999). We will reverse the trial court's decision to award attorney fees only if the decision is clearly against the logic and effect of the facts and circumstances. *Id.* When determining whether an award of attorney fees is appropriate, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors which bear on the reasonableness of the award. *Id.* Any misconduct on the part of one party which causes the other party to directly incur additional fees may be taken into consideration. *Meade v. Levett*, 671 N.E.2d 1172, 1179

(Ind.Ct.App.1996). When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper. *Bartley*, 712 N.E.2d at 546.

While Father focuses his attention upon Mother's behavior regarding visitation, we have already made clear that Mother's actions did not violate a court order for the reason that there was no set visitation schedule. There is also little evidence of any misconduct on the part of Mother which caused Father to incur additional expenses with regard to the custody modification. This is drawn out in the fact that the trial court did not rule upon any of the petitions for contempt, several of which were filed by both parties. While there was evidence that Mother disparaged Father to D.H. and that Mother refused to give Father her home address when she moved to Patoka, these acts more appropriately go toward whether Mother having custody was in the best interests of the child, not whether Mother committed misconduct for the purpose of having an award of attorney fees entered against her.

[26, 27] Here, the fact that has the most bearing upon whether an award of attorney fees is appropriate is the financial resources available to both parties. The evidence shows that Mother made approximately four hundred forty dollars per week in gross income, which is two hundred dollars less than Father. For Mother to pay the attorney fees of Father, Mother would be forced to pay her total salary for several months to cover Father's

4. Mother directs us to Indiana Code § 31–1–11.5–16 for the appropriate statutory authority controlling the award of attorney fees in this case. However, the authority Mother cites no longer exists and has been recodified in several different Articles dealing with dissolution of marriage and custody issues. Indiana Code § 31–17–7–1 is the appropriate authority upon which to rely when determining if attorney fees are warranted in a custody and visitation modification. We also note that Father makes no reference to which statutory authority he relied upon, nor did he address the fact that Mother was relying upon a statute which no longer existed. Be that as it may, both parties have provided us with enough information upon which to rely to properly address their relevant arguments.

legal expenses. Added to this is the approximately sixty dollars per week that Mother is to pay in child support. The evidence shows that Father was in a much better financial position than Mother and had resources upon which he could rely that Mother did not. As our policy states, permitting the awarding of attorney fees serves to insure equal access to the courts despite the relative financial conditions of the parties. *Heiligenstein v. Matney,* 691 N.E.2d 1297, 1305 (Ind.Ct.App.1998). There can be no assurance of equal access to the courts when a party, who is in the financial position of Mother, is required to pay the attorney fees of another who is in a superior financial state. While the trial court may order a party to pay a *reasonable* amount for attorney fees of the other party, the order here was not reasonable and is clearly against the logic and effects of the facts and circumstances before the court.

We remand to the trial court with instruction to vacate the order awarding attorney fees to Father.

### Conclusion

We affirm the trial court's decision to change custody of D.H. to Father as the decision was not an abuse of discretion. We also affirm the trial court's order that child support be paid retroactively by Mother. However, the trial court is ordered to change Mother's visitation to either comply with the Parenting Time Guidelines or provide a written explanation for any deviation from the Guidelines. Finally, we reverse the trial court's order that Mother pay Father's attorney fees.

The order is affirmed in part, reversed in part, and remanded with instructions.

BAKER, J., and DARDEN, J., concur.