In re the Marriage of James C. VAN WIEREN, Appellant–Respondent/Cross–Petitioner,

v.

Jane VAN WIEREN, Appellee–Petitioner/Cross–Respondent.

No. 45A05–0603–CV–112.

Court of Appeals of Indiana.

Dec. 12, 2006.

Jill S. Swope, Weiser Sterba & Wyllie, LLP, Schererville, IN, Attorney for Appellant.

## OPINION

BAKER, Judge.

Appellant-respondent James Van Wieren appeals from the trial court's order ruling on a number of pending motions, including appellee-petitioner Jane Van Wieren's petition to modify and James's cross-petition to modify the parties' split physical custody arrangement. In particular, James argues that the trial court erred in: (1) refusing to modify the split physical custody arrangement; (2) refusing to hold Jane in contempt of court; (3) refusing to modify James's child support obligation retroactive to the date requested by James; and (4) refusing to order Jane to pay a portion of James's attorney fees. Finding no error, we affirm the judgment of the trial court.

### FACTS

James and Jane entered into a Partial Property Settlement Agreement ("the Agreement") concerning child custody on March 15, 2001, which was merged with the parties' dissolution decree that was entered on April 6, 2001. The Agreement provided that James was to assume sole legal custody of the couple's five children, E.V.W., D.V.W., N.V.W., J.V.W., and T.V.W. The Agreement further provided that the parties would share split physical

custody of the children, with James as the primary custodian, as follows:

The parties shall alternate weeks in which they have the minor children from Thursday after school through the following Monday mornings when the children are returned to school or the other parent. Mondays, Tuesdays, and Wednesdays each week, the children shall be with [Jane] from the time they get out of school until [James] picks them up at six o'clock (6:00 p.m.). If [James] will be late for any reason, he shall contact [Jane] as soon as possible to let her know the exact time he will be picking the children up.

Each parent shall be responsible for getting the children to their activities when that child is with them.

The parties shall alternate the children's birthdays on an annual basis.

[Jane] shall receive Mother's Day and her birthday with the children each year and [James] shall receive Father's Day and his birthday with the children each year.

The parties shall alternate the following holidays: [Listing of Major Holidays]. If a parent loses a normal "weekend" period with the children due to the other parent receiving a holiday, the regular alternating extended weekend schedule shall resume the following week, so one parent does not lose that weekend.

The parties agree to exercise the first right of refusal with regard to the children's care during the parent's working hours.

Appellant's App. p. 18–19. The Agreement provided that neither party would make derogatory remarks about the other in front of the children and that the couple agreed to abide by the preamble to the Lake County Visitation Guidelines then in place. The Agreement also provided that James would pay Jane $100 per week in child support.

Unfortunately, Jane and James quickly proved their unwillingness to put aside their differences and cooperate for the children's sake. The record details troubling behavior on the part of both parties, including significant issues regarding communication about the children, a relentless pattern of parental alienation and derogatory comments made in front of the children, and allegations that James physically abused the children, though these allegations were later investigated and determined to be unfounded.

On June 17, 2003, Jane filed a petition for modification of custody and child support, requesting that she be granted sole legal and physical custody of the children. James responded by filing a cross-petition for modification—also requesting sole custody—a rule to show cause, and a petition for custodial evaluation. The psychologist who had performed the custody evaluation for the family during the divorce proceedings was appointed to serve again as the custody evaluator. The parties further stipulated to the appointment of a guardian ad litem (GAL) for all of the children.

During the pendency of these proceedings, serious problems continued to develop within the family. In April 2004, Jane filed an emergency petition for modification of custody seeking an expedited ruling in her favor, alleging emotional abuse and neglect on the part of James, and bringing to the court's attention the distress of then-seventeen-year-old E.V.W. stemming from a recent medical problem. The court denied Jane's request.

In May 2004, E.V.W. ran away from James's home and stayed with Jane, refusing to leave. By her own admission, Jane did not encourage the child to return to James's residence as required by the

Agreement. Jane filed another emergency petition for modification of custody and for removal of the GAL, informing the court that E.V.W. wanted to remain with her and was distressed because of a recent gynecological problem and her relationship with James, requesting sole custody of all the children, and alleging that the GAL had failed to carry out her duties. James responded with a second petition for rule to show cause and citation, which informed the trial court that Jane had refused to return his phone calls or to inform James of E.V.W.'s medical appointments and detailed prognosis. The trial court determined that there was no emergency but it ordered the parties to maintain the status quo on a temporary basis, leaving E.V.W. in Jane's care and granting the parties joint legal custody as to the child, with parenting time to be worked out by the parties. The court also denied Jane's request to remove the GAL.

During the months that followed, E.V.W. continued to refuse contact with James, and it appears from the record that Jane failed to encourage E.V.W. to reunite with her father and refused to discuss the child, including her medical problems, with James. Throughout the pendency of this case, James continued to pay Jane $100 per week in child support.

The trial court held a hearing on December 21, 2005. The custody evaluator and the GAL submitted reports to the trial court and testified at the final hearing that they believed James and Jane are unable to maintain a split physical custody arrangement without causing significant and long-term harm to the couple's children. They cited, in particular, the pattern of parental alienation and derogatory comments to which the children were subjected, and both witnesses expressed an opinion that Jane was at far greater fault on the matter than James. The GAL and the evaluator expressed concern regarding the children's development and indicated their belief that the children would continue to experience distress and difficulty as long as a split physical custody arrangement was in place. They both opined that E.V.W.'s estrangement from her father resulted from Jane's influence rather than from James's parenting and they expressed concern that as the other four children grow up Jane will influence them in a similar fashion.

Other witnesses before the court generally echoed the opinions of whichever party called them as witnesses and, regardless of which party they "sided" with, recognized the failure of the split physical custody arrangement. Jane's witnesses reported that she was a good mother who participated in her children's lives, created a loving and supportive atmosphere, and dealt admirably with the numerous difficulties James forced upon her as a co-parent. James's witnesses reported that he was a good provider who maintained a clean and decent home for his children, treated each of them well, encouraged them to act responsibly, and ensured that their needs were met.

The trial court entered an order on February 6, 2006, providing in pertinent part as follows:

1. The Court does not find either the Mother or the Father in contempt of Court.

* * *

4. The only modification of the Court's prior Orders relating to custody shall be with respect to the parties' daughter, [J.V.W.], born July 22, 1992. The Court finds that it is in her best interest that the Court enter an Order of modification.

5. The Court finds that [J.V.W.] is the sole female in an all male household

and needs more time with Mother. Accordingly, the parties are to share actual physical custody (i.e. time) with [J.V.W.] equally; that is 50/50. The parties shall have 30 days within which to stipulate to a schedule for such equal division of physical custody. In the event the parties are unable to so stipulate or the Court is not in receipt of said stipulation, the Court will determine the schedule.

* * * * *

8. Each party shall pay and be responsible for their respective attorney's fees.

9. All other Orders not specifically modified herein shall remain in full force and effect.

Appellant's App. p. 173–74. James now appeals.[1]

## DISCUSSION AND DECISION

 At the outset, we note that Jane has failed to file an appellee's brief. "Indiana courts have long applied a less stringent standard of review with respect to showings of reversible error when an appellee fails to file a brief." *McKinney v. McKinney*, 820 N.E.2d 682, 685 (Ind.Ct. App.2005). Where no appellee's brief has been filed, the judgment may be reversed if the appellant's brief presents a prima facie case of error. *Id.* In this context, prima facie error is error at first sight, on first appearance, or on the face of it. *Id.* With this in mind, we turn to James's arguments.

### I. Modification of Joint Custody Arrangement

 James first argues that the trial court erred when it denied his request to modify the parties' split physical custody arrangement with respect to the four youngest children. In general, we review custody modifications for an abuse of discretion, with a "preference for granting latitude and deference to our trial judges in family law matters." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind.2002). When reviewing a trial court's ruling on a petition to modify custody, we may neither reweigh the evidence nor judge the credibility of the witnesses. *Leisure v. Wheeler*, 828 N.E.2d 409, 414 (Ind.Ct.App.2005). Rather, we consider only the evidence most favorable to the judgment and any reasonable inferences that may be drawn from that evidence. *Id.*

 A petitioner seeking modification of a child support order bears the burden of demonstrating that the existing custody arrangement should be altered. *Id.* A court may not modify a child custody order unless (1) the modification is in the best interests of the child and (2) there is a substantial change in one or more of the factors, set forth in Indiana Code section 31–17–2–8, that a court may consider when it originally determines custody. Ind.Code § 31–17–2–21.

 James relies, in part, upon *Aylward v. Aylward* as support for his argument, but *Aylward* focused solely on a joint *legal* custody arrangement and did not address a split *physical* custody arrangement. 592 N.E.2d 1247 (Ind.Ct.App. 1992). In arriving at its decision, the *Aylward* court noted that obstreperous par-

1. E.V.W. is now nineteen years old. It is apparent that the trial court's final order contemplates E.V.W. remaining in Jane's home, appellant's app. p. 173, and although it is not entirely clear from James's brief, given E.V.W.'s age, we conclude that James only challenges the trial court's order with respect to the four younger children.

ents sharing legal custody would have significant difficulties reaching a consensus on such fundamental issues as child-rearing philosophies, religious beliefs, and lifestyles. *Id.* at 1251–52. When divorced parents are charged with making major decisions as a unit, it is apparent that a relationship filled with hostility and resentment presents a significant obstacle. It follows, therefore, that when child-rearing becomes a "battleground," *id.* at 1252, modification of joint legal custody is a sensible step to take for the best interests of the children.

■ It does not necessarily follow, however, that the same result must be reached with respect to a split physical custody arrangement. Here, for instance, Jane and James need not reach a consensus on or make major decisions together. That responsibility rests in James's hands alone. Instead, the parties must merely abide by the terms of their agreement by ensuring that the children are at the right place at the right time. Awarding sole physical custody to one party or the other will do nothing to solve the underlying problem—the venomous relationship between Jane and James and the way in which they convey their disgust for the other to their children. No court can be present behind closed doors to act as a referee when Jane makes a biting comment about James in front of the children, and vice versa. That, by necessity, is left to the consciences of the parents involved, and it is clear that Jane and James have cavernous spaces on top of their shoulders where Jiminy Cricket should be perched.

The trial court heard all of the evidence presented by both parties, and most witnesses echoed the opinions of whichever party called them as witnesses. The record is replete with evidence supporting both parties' assertions. Following the hearing, having weighed the evidence and judged the witnesses' credibility, the trial court concluded that there was no need to modify the split physical custody arrangement. We cannot conclude, given this record, that the trial court abused its discretion in reaching that decision.

There can be no debate that little about this situation is in the best interests of the children, but unfortunately there is little that can be done by a court to solve the problem. Thus, we hold that the trial court did not abuse its discretion in concluding that maintaining the status quo with respect to all of the children except for J.V.W. was the proper course of action to take. If the trial court had awarded sole physical custody to either party, the "winner" would have been well rewarded for obstreperous, disrespectful, and distasteful behavior. Such a result is unwarranted under these circumstances and, therefore, we affirm the judgment of the trial court on this issue.

### II. Contempt of Court

■ James next contends that the trial court erred when it found that Jane should not be held in contempt of court for various acts cited by James, including: (1) Jane's refusal to provide James with her telephone number; (2) her refusal to inform him of her place of employment; (3) her instructions to the children to keep secrets from James, lie to him, or refrain from answering his telephone calls; (4) her interference with James's legal custody of the children; (5) her refusal to divide pictures from the parties' marriage as agreed to in the dissolution decree; and (6) her refusal to require E.V.W. to return to James after the child began living with Jane in May 2004.

■ As we consider this argument, we observe that the determination of whether a party is in contempt of court is a matter within the trial court's discretion.

*In re Paternity of P.E.M.*, 818 N.E.2d 32, 39 (Ind.Ct.App.2004). We will reverse the trial court's finding of contempt only where an abuse of discretion has been established. *Id.* A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Id.* When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

 Contempt of court "involves disobedience of a court which undermines the court's authority, justice, and dignity." *Srivastava v. Indianapolis Hebrew Congregation, Inc.*, 779 N.E.2d 52, 60 (Ind.Ct. App.2002) (internal quotation omitted). It includes any act that tends to deter the court from the performance of its duties. *Id.* There are two types of contempt— direct and indirect. *Id.* Direct contempt involves actions occurring near the court that interfere with the business of the court and of which the judge has personal knowledge. *Id.*

 James argues that Jane has acted in indirect contempt of court, which involves behavior that undermines the activities of the court but fails to satisfy one of the other direct contempt requirements. *Id.* Indiana Code sections 34–47–3–1 to –4 describe the actions for which one can be held in indirect contempt of court—willful disobedience of a process or order, resisting process, assaulting, influencing, or intimidating witnesses, and false or inaccurate reporting of a proceeding.

James points out that Jane has directly admitted to some of the acts that he describes as contemptuous, such as refusing to provide James with her telephone number and work information and various allegations regarding Jane's conduct with the children. We agree with James that a trial court has the discretion to find these actions to constitute contempt. However,

we will not *require* the trial court to find a party to be in contempt where, as here, the court has found that those actions fall short of necessitating contempt sanctions. We find, therefore, that the trial court did not abuse its discretion in declining to hold Jane in contempt of court.

### III. Retroactive Modification of Child Support

 James next argues that the trial court erred when it denied his request to modify child support retroactive to the date E.V.W. began living with Jane and instead ordered a modified support amount running from the date of the trial court's final order. Decisions regarding child support rest within the sound discretion of the trial court. *Haley v. Haley*, 771 N.E.2d 743, 752 (Ind.Ct.App.2002). We will reverse only for an abuse of discretion or if the trial court's determination is contrary to law. *Id.* A trial court has the discretionary power to make a child support modification "relate back to the date the petition to modify is filed, or any date thereafter." *Id.*

 James notes that the proceedings before the trial court in this case were delayed numerous times and that these delays left the matter of modified child support unaddressed from May 2004, the time at which E.V.W. moved in with Jane, to the time of the court's final order. Although this is true, it does not necessarily support James's argument for retroactive modification. We also note that at no point leading to the trial court's final order did James request a modification of child support. We cannot say that the trial court acted outside the scope of its considerable discretion when it determined that the child support obligation need not be modified retroactively. Thus, we affirm the trial court's decision on this issue.

### IV. Attorney Fees

■ Finally, James argues that the trial court erred when it denied his request to order Jane to pay his attorney fees. In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount toward an opposing party's attorney fees. *Ratliff v. Ratliff,* 804 N.E.2d 237, 248 (Ind.Ct.App.2004). A trial court's decision to grant or deny attorney fees is left to the sound discretion of the trial court, and a decision to deny attorney fees will be reversed only for an abuse of discretion. *Id.* at 248–49. The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* at 249.

■ "When determining whether an award of attorney fees is appropriate, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award." *Id.* Additionally, the trial court may take into account "[a]ny misconduct on the part of one party that causes the other party to directly incur additional fees . . . ." *Id.* When one party is in a superior position to pay fees over the other party, an award of attorney fees is proper. *Id.*

■ Here, again, we cannot say that the trial court abused its discretion when it denied James's request for attorney fees. James is correct that a considerable number of motions were filed in this case and that counsel was required to come before the trial court numerous times. The same, however, can be said of many child custody cases. Moreover, some of Jane's actions upon which he relies as support for his argument, such as filing the petitions for rule to show cause, were at least partially decided in her favor.

Finally, the parties' filings also indicate that James's income is considerably higher than Jane's. While we do not wish to suggest that earning a lower income insulates a party from being charged with attorney fees, it is, nevertheless, a proper consideration for the trial court. *Cf. Taylor v. Taylor,* 436 N.E.2d 56, 60 (Ind.1982) ("The fact that one party has assets from which [attorney fees] could be [paid] does not, of itself, make an award for that party's benefit improper.") Given all of these considerations, we conclude that the trial court did not abuse its discretion in refusing to order Jane to pay a portion of James's attorney fees.

The judgment of the trial court is affirmed.

CRONE, J., concurs.

VAIDIK, J., concurs in part and dissents in part with opinion.

VAIDIK, Judge, dissenting in part, concurring in part.

I must respectfully dissent from the opinion of my colleagues with regard to the trial court's failure to modify the custody arrangement. In all other respects, I concur with the majority.

The majority correctly asserts our traditional review in custody modification cases: "A court may not modify a child custody order unless (1) the modification is in the best interests of the child and (2) there is a substantial change in one or more of the factors, set forth in Indiana Code section 31–17–2–8, that a court may consider when it originally determines custody." Op. at 221. Conversely, a trial court should modify a custody order if it is in the best interests of the children to do so, provided that there is a substantial change in one of the factors cited in section 31–17–2–8. Both of those prerequisites are met here,

and a modification is in order for the well being of the Van Wieren children.

The majority admits that "[t]here can be no debate that little about this [current custody] situation is in the best interests of the children," and I agree whole-heartedly with its statement. Further, the second factor listed in Indiana Code § 31–17–2–8 is "the wishes of the child's parent or parents." It is irrefutable that the wishes of these parents have changed, given that both parties filed petitions seeking modification of the joint physical custody arrangement. Furthermore, there is not one iota of evidence in the record suggesting that the present arrangement is workable. Both the custody evaluator and the guardian ad litem had contact with all members of this family, and each indicates that these parents are unable to cooperate with a joint physical custody order and that James was more likely the appropriate choice for sole custody. All other witnesses, as the majority noted, took the side of the party calling them, but *all* of them agreed that joint physical custody is wrong for this family. This custody arrangement, then, is ripe for modification.

We held in *Aylward* that "a trial court abuses its discretion when it awards joint custody to parents who have made child rearing a battleground." 592 N.E.2d at 1252. The *Aylward* court noted that in such a case, a joint legal custody arrangement "may simply provide a framework for the parents to continue the conflict which brought them to divorce in the first place. The conflict would just be focused solely on the children." *Id.* (quotation omitted).

The Van Wieren children are ensnared in just such a conflict, and we should not affirm a decision that flies in the face of their best interests and maintains an environment that is so clearly poisoned with their parents' discord. I believe the majority's hesitance to extend the principles

behind *Aylward* to a situation involving joint physical custody ignores the reality of any physical custody arrangement providing parenting time that approaches an equal division of time between parents. This is especially true where, as here, the parents exchange the children several times a week. These parents are required to maintain significant, ongoing communication, and they each have unlimited opportunities to influence their children. And sadly, every bit as much as in *Aylward*, this arrangement has become a battleground to the detriment of these children. I believe that this case makes it clear that we should extend *Aylward* to cases involving joint physical custody.

The majority rests its decision on its claim that "no court can be present behind closed doors," op. at 222, and that "there is little that can be done by a court to solve [this] problem," *id.* at 222. I cannot support this reasoning. A trial court has a duty to determine whether a custody arrangement—legal or physical—is in the best interests of the children before it. *See In re Paternity of T.G.T.*, 803 N.E.2d 1225, 1228 (Ind.Ct.App.2004), *reh'g denied, trans. denied.* Every day in our State, trial courts engage in the fact-finding process of determining which of two parents—oftentimes, both parents who have behaved poorly—is the better choice to serve as a primary physical custodian. All too often, this involves determining who between two parents is the lesser of two evils—which parent is least likely to poison the children and alienate them from their other parent. The majority's opinion permits sidestepping this process and allows the trial court to "split the baby." I would reverse on this issue and remand to the trial court with instructions that it award sole legal and physical custody of the children either to James or Jane and grant the other parent parenting time scheduled

in a manner that is conducive to the best interests of the children.