

FILED

Aug 13 2015, 8:36 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEES |
|---|---|
| Monty K. Woolsey | Mark Small |
| Cross, Pennamped, Woolsey & Glazier, P.C. | Indianapolis, Indiana |
| Carmel, Indiana | Roberta L. Ross |
| | Ross and Brunner |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| David V. Taylor, | August 13, 2015 |
| *Appellant-Respondent,* | Court of Appeals Case No. 49A04-1502-DR-58 |
| v. | Appeal from the Marion Superior Court |
| Sheryl Crowder Taylor, | The Honorable Heather A. Welch, Judge |
| *Appellee-Petitioner.* | Cause No. 49D01-0402-DR-230 (moved from 49D12-0402-DR-230) |

**Najam, Judge.**

## Statement of the Case

David Taylor ("Father") appeals the trial court's retroactive modification of his child support payments. He presents one issue for our review, which we revise and restate as follows: whether the trial court erred when it modified his child support payments retroactively, based on his notice of intent to relocate, before either party had filed a petition to modify child support. The trial court held that when Father filed notice of intent to move and his petition to modify custody, the court was also authorized to modify support. We disagree and hold that the retroactive support order was contrary to law because the statute requires a party to file a petition to modify a child support order.

We reverse and remand with instructions.

## Facts and Procedural History

Father married Sheryl Crowder Taylor ("Mother"),[1] and two children, M.T. and L.T., were born of the marriage (collectively "the children"). Father and Mother dissolved their marriage on December 6, 2004, and the trial court entered a permanent custody order on March 9, 2007, which provided for joint legal and physical custody of the children. On June 20, 2009, the court entered a child support order that directed Father to pay child support to Mother in the

---

[1] The record does not disclose when the two were married.

amount of $107.82 per week.  The June 2009 order remained in effect until the current dispute.  M.T. is now emancipated, and L.T. is fifteen years old.

[4]     On April 15, 2011, Father filed notice of his intent to relocate from Indianapolis to Alabama ("relocation notice") to pursue an employment opportunity.  In the relocation notice, Father stated that he "anticipate[d] a change in custody, child support[,] and/or child support orders."  Appellant's App. at 102.  The relocation notice also contained a statement informing Mother that she "may file a petition to modify a custody order, parenting time order, grandparent visitation order[,] or child support order."  *Id.*  That same day, Father filed a petition to modify child custody with respect to L.T., which requested to remove L.T.[2] from Indianapolis to Alabama but did not reference—let alone, request—a modification of child support.  On May 4, 2011, Mother objected to Father's petition to modify child custody, and, concomitantly, she filed an emergency petition for a temporary change of custody.[3]  Neither of Mother's filings requested a modification of child support.

[5]     Father moved from Indianapolis on or before May 4, 2011, but, due to several continuances, the parties' competing petitions remained pending until late

---

[2]  Throughout the duration of this case, Father's relationship with M.T. deteriorated completely.  On July 21, 2009, Mother was granted sole physical custody over M.T., and, on September 14, 2011, Mother was also granted sole legal custody over M.T.  Father was granted parenting time.

[3]  The trial court ultimately determined that no emergency existed.

2014.[4]  In the interim, the parties filed several other motions, which included a July 13, 2012, unopposed motion by Father to vacate a final hearing date on his petition to modify custody ("July 2012 motion") and a March 6, 2013, motion by Mother to, among other things, "Complete Pending Modification of Custody and Support" ("March 2013 motion").  Appellant's App. at 41.

[6]  In his July 2012 motion, Father stated:

> The amount of child support Father should pay is an issue that remains to be determined but the support cannot be calculated until Father's parenting time is decided.  After the parties agree on a parenting schedule with a parenting coordinator, the attorneys should be able to do the support calculation.  The undersigned hopes there will not be the necessity of a further hearing on any issue in this case.

*Id.* at 112b.  The trial court granted Father's motion.

[7]  In Mother's March 2013 motion, she stated that, "[o]n or about April 15, 2011, [Father] filed a Motion to Modify custody and support as well as an intent to move." *Id.* at 113.  Thus, Mother asked the court to calculate "the amount of past due support." *Id.*  In response to Mother's motion, on July 15, 2013, Father filed a motion to dismiss, in which he declared:

> 4.  . . . [N]either party has filed a request to modify child support.

---

[4] In June 2011, the parties mediated the issue and reached a partial agreement, but that agreement is not contained in the record.  In December 2013, the court issued a temporary order that gave Father parenting time over L.T., and at a hearing on all pending matters, held on August 11 and 12, 2014, Husband indicated that he no longer requested a transfer of physical custody of L.T. to him.

5. On April 15, 2011, Father filed his Notice of Intent to Move[,] in which he noted that Mother "may file a petition to modify a custody order, parenting order, grandparent visitation order, or a child support order."

6. Also on April 15, 2011, Father filed his Verified Petition for Modification of Custody. No where [sic] in this request for a modification of custody [is] a request to modify child support.

7. Mother has never filed a petition to modify child support.

* * *

9. As such, to the extent that Mother's March 6, 2013[,] petition requests a modification of child support effective at any time prior to August 2013, Father believes that that request ought to be dismissed as constituting a[n improper] request for retroactive modification of child.

*Id.* at 116.

[8] On August 5, 2013, Mother objected to Father's motion to dismiss. In support, Mother highlighted that, in his relocation notice, Father stated that he "anticipate[d] a change in custody, child support, and/or parenting time due to this move." *Id.* at 118. Mother also emphasized the statement Father made in his July 2012 motion that "[t]he amount of child support Father should pay is an issue that remains to be determined . . . [.]" *Id.* at 120. As such, Mother asserted:

1.  The most recent matters before this court were precipitated by [Father's] Notice of Intent to Move and Petition to Modify Custody filed April 15, 2011.

* * *

3.  By [Father's] own pleading[s], the matter of support is before this court as of April 15, 2011.

* * *

5.  Simultaneous with the Notice of Intent to Move, [Father] filed his Petition to Modify Custody.  In so doing, he triggered the hearing that required the court to address the issues of custody, support[,] and visitation.

6.  Thereafter, [Mother] filed a Verified Emergency Petition for Temporary Change of Custody and Objection to Move of Child on May 4, 2011.  Again, this triggers a requirement for a hearing in which the court "shall set the matter for a hearing to review and modify, if appropriate, a custody order, parenting time order, grandparent visitation order, or child support order."

* * *

10.  . . . [Father] alleges that[,] absent [Mother] filing a redundant modification of support based upon the mandatory duty placed on this court by [Indiana Code Section] 31-17-2.2-1, the Court cannot and should net ever consider the effect of a move out of State on an existing child support order.  That being the case, the entire statute must be ignored and the matter of [Father] moving cannot be taken into consideration by this court in any future hearings.

* * *

13. Notice of Intent to Move[,] by its very nature[,] is a Petition to Modify all present circumstances based upon a substantial change of circumstances for a party[,] which, by its very nature, renders the [March 2007 custody] order inappropriate.

*Id.* at 118, 120-22. The trial court agreed with Mother and denied Father's motion to dismiss. In so doing, the court concluded, "The matter of support was properly placed before this court by [Father on] April 15, 2011[,] and shall be heard with all other matters in January 2014." *Id.* at 124.

[9] The January 2014 hearing was continued and, ultimately, was held over the course of August 11, August 12, and September 15, 2014. At the hearing, the parties presented evidence of their respective incomes from 2011 onward. On November 5, 2014, the trial court entered a thorough "Order on All Pending Motions." *Id.* at 57. In the order, the trial court noted:

> Mother and Father's attorneys agreed that the Father's overnights changed when he moved to Alabama . . . and that the split physical custody arrangement was no longer being executed by the Mother and Father due to the distance.
>
> * * *
>
> From May 4, 2011 through August 31, 2013 . . . [t]he Court finds that the Mother ha[d] a[n average] gross weekly income of $1,213.79. For this same time period, the Court finds the Father ha[d] a[n average] gross weekly income of $3,090.50. . . . This is the time period when both [M.T.] and [L.T.] resided at home and Father had moved to Alabama. The average number of overnights from 2011, 2012, and 2013 is 58 for Father. . . . Therefore, the Father shall pay child support from May 4, 2011[,] through August 30, 2013[,] in the amount of $327.00. . . .

From August 31, 2013[,] to August 6, 2014, the Court finds that the Mother ha[d] a[n average] gross weekly income of $1,110.47 and the Father ha[d] a[n average] gross weekly income of $3,337.83. . . . This is when [M.T.] was living away from home and in college before she was emancipated. The Court hereby orders the Father to pay child support in the amount of $274.00. . . . The Court finds that the Father is entitled to 66-70 overnights. . . .

From August 7, 2014, forward the Court finds the Mother has a gross weekly income of $1,099.54 and the Father of $3,366.01. The Father is entitled to 73 overnights. The Court hereby orders that the Father pay child support in the amount of $235.00. . . .

* * *

. . . [T]he Court finds that the Father's [c]hild support arrearage as of August 7, 2014[,] was $21,317.75. The Court hereby orders the Father to pay $250.00 per week toward the arrearage beginning November 7, 2014. . . .

*Id.* at 80-85.

[10]     After the trial court issued its order, Father filed a motion to correct error. In relevant part, Father alleged that the court's modification of his child support payments retroactive to May 4, 2011, was contrary to law because no party had filed a petition to modify child support and, therefore, no party had placed the issue of child support before the court at that time. On January 13, 2015, the court denied the husband's motion and, in so doing, stated:

Father was no longer permanently living in Indianapolis as of May 4, 2011[,] and did not maintain the split custody

arrangement as he ha[d] previously[,] where [L.T.] would spend one week with his Mother and one week with his Father. Thus, it would be unfair to reward a parent for moving far away from his/her children, exercising less parent[ing] time and not fulfilling a joint custody arrangement, and then prohibit modification of child support back to when such change in circumstances [occurred]. This is not in the best interest[s] of the minor children. *In this case, Indiana law[,] under the relocation statute[,] provides the Court with the authority to modify a . . . child support order. This Court utilized this statutory authority to properly modify the Father's child support and make it effective May 4, 2011[,] based on all the evidence presented.*

*Id.* at 146 (emphasis added). This appeal ensued.

# Discussion and Decision

[11] Father argues that the trial court erred when it modified his child support payments retroactive to May 4, 2011. "Decisions regarding child support rest within the sound discretion of the trial court." *Haley v. Haley*, 771 N.E.2d 743, 752 (Ind. Ct. App. 2002). Thus, we reverse child support determinations only if the trial court abused its discretion or made a determination that is contrary to law. *Id.* "A trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify is filed, or any date thereafter." *Id.* A "retroactive modification of support is erroneous only if the modification purports to relate back to a date earlier than that of the petition to

modify."[5] *Carter v. Dayhuff*, 829 N.E.2d 560, 567 (Ind. Ct. App. 2005) (quoting *Reeves v. Reeves*, 584 N.E.2d 589, 594 (Ind. Ct. App. 1992), *trans. denied*). "This rule serves to avoid encouragement of dilatory tactics and further the purposes of the changed circumstances rule." *Smith v. Mobley*, 561 N.E.2d 504, 508 (Ind. Ct. App. 1990), *trans. denied*.

[12] Indiana's relocation statute requires a "relocating individual" to "file a notice of the intent to move" with the appropriate court and with the "nonrelocating individual." Ind. Code § 31-17-2.2-1(a). In addition to changes in personal information wrought by the relocation, the relocation notice must contain "[a] statement that a nonrelocating individual may file a petition to modify a custody order, parenting time order, grandparent visitation order, or child support order." I.C. § 31-17-2.2-3. And, "[u]pon motion of a party, the court shall set the matter for a hearing to review and modify, if appropriate, a custody order, parenting time order, grandparent visitation order, or child support order." I.C. § 31-17-2.2-1(b). "The purpose of this notice is . . . to provide the means for the trial court to modify visitation and support orders that may become unreasonable due to a long distance move by the custodial parent." *Fridley v. Fridley*, 748 N.E.2d 939, 941 (Ind. Ct. App. 2001).

[13] Here, it is undisputed that, prior to March 6, 2013, neither Father nor Mother had filed a petition to modify child support. In Father's relocation notice, he

---

[5] Retroactive modification is permitted in two circumstances, but those circumstances are not relevant here. *See Becker v. Becker*, 902 N.E.2d 818, 820 n.4 (Ind. 2009).

stated that he "anticipate[d] a change in . . . child support," but he did not request a modification of that support. Appellant's App. at 102. Instead, as the relocation statute requires, Father alerted Mother that she could file such a motion. *See* I.C. § 31-17-2.2-3(a)(2)(H). Similarly, although Father filed a petition to modify custody in conjunction with his relocation notice, Father, again, did not request a modification of child support. Neither did Mother request a modification of child support in her objection to Father's petition to modify custody or in her emergency petition for a temporary change of custody. And, finally, although Father acknowledged in his unopposed July 2012 motion that child support was an issue that needed to be determined in the future, Father did not ask the trial court to make that determination. Rather, Father indicated that he hoped to reach an agreement with Mother regarding parenting time and child support without further court intervention.

[14]   Thus, the first motion filed by either party that could be construed as a petition to modify child support came on March 6, 2013, in the form of Mother's motion to "Complete Pending Modification of Custody and Support." Appellant's App. at 113. Despite this, the trial court modified Father's child support payments retroactive to May 4, 2011, the date that Father had left Indiana and, in the absence of a court order, that the parties had sua sponte modified the physical custody arrangement. In so doing, the trial court stated that the relocation statute provided it with the statutory authority to make the retroactive child support modification. In other words, the trial court determined that Father's relocation notice, even in the absence of a petition to

modify child support, gave the court the power to modify Father's child support effective the date of his relocation notice.

[15]     In this appeal, Father asserts that the trial court erred as a matter of law when it applied the relocation statute in this manner, and, therefore, he states that our standard of review is de novo. In contrast to the trial court's order, Father argues that Mother's March 6, 2013, motion is the first date that either party effectively petitioned to modify child support and, consequently, "is the most remote date the trial court could arguably use when making a retroactive child support modification in this case." Appellant's Br. at 9.

[16]     Mother, however, disputes that the trial court erred as a matter of law when it modified Father's child support, and, moreover, Mother even challenges that our standard of review in this appeal is de novo. In this regard, she contends that the correct standard of review is abuse of discretion and complains that Father failed to provide a transcript of evidentiary hearings and an adequate record to support his appeal. Mother alleges that the missing transcript would show that Father waived any objection to the child support order and that he is also estopped to complain about it.

[17]     But if Mother believed the record provided by Father on appeal was inadequate—and that a more complete record would show that Father failed to object and, therefore, waived any objection to an order modifying child support—Mother could have supplemented the record. *See* Ind. Appellate Rules 9(G) & 49(A). Instead, Mother asks us to make that determination

without providing a record to support it. And Husband's appeal is based on Mother's alleged failure to petition for a modification of trial support, and the record shows that Mother did not place the issue of child support before the trial court until March 6, 2013.

[18] Thus, we agree with Father that we are faced with an issue of statutory interpretation: we must determine whether a statutorily-required relocation notice, without further motion by any party, also places the issue of child-support modification in front of the trial court for its determination. "Generally, statutory interpretation is a question of law and determinations in that regard are subject to de novo appellate review." *Higgins v. State*, 855 N.E.2d 338, 341 (Ind. Ct. App. 2006). Because we agree with Father that the trial court's child-support determination was contrary to law, we reverse. *See Haley*, 771 N.E.2d at 752.

[19] There is no question that, in addition to the relocation notice itself, our relocation statute anticipates and also requires the filing of a petition to modify child support before the trial court has the authority to modify a child support order. Indeed, Indiana Code Section 31-17-2.2-3(a)(2)(H) requires that the relocation notice itself provide notice to the nonrelocating individual that she "may file a petition to modify a custody order . . . or child support order." Even more telling, Section 31-17-2.2-1(b) states, "*Upon motion of a party*, the court shall set the matter for a hearing to review and modify, if appropriate, a custody order . . . or child support order." (Emphasis added.) While the purpose of a relocation notice is "to provide the means for the trial court to

modify visitation and support orders that may become unreasonable due to a long distance move by the custodial parent," *Fridley*, 748 N.E.2d at 941, the filing of a motion is a procedural prerequisite that must be satisfied before the court may modify a support order under the statute, *cf. Fight Against Brownsburg Annexation v. Town of Brownsburg*, ___ N.E.3d ___, 2015 WL 2328736, at *3-6 (Ind. Ct. App. May 15, 2015) (explaining that, although a court has subject matter jurisdiction over a given issue, the parties must still satisfy certain procedural prerequisites to state a claim). A relocation notice is, in itself, insufficient to trigger consideration of a child support modification.[6] Here, the trial court erred as a matter of law when it concluded that, without such a motion from either party, Father's relocation notice gave the court the authority to modify the existing child support order retroactive to May 4, 2011, the date Father was no longer living in Indianapolis.

[20]     The parties' competing petitions to modify child *custody* also did not place modification of child *support* in front of the court. The two issues, while frequently related, are distinct and are treated as such by our Code. *Compare* I.C. §§ 31-16 (governing the "Support of Children and Other Dependents") *with* I.C. §§ 31-17 (governing "Custody and Visitation Rights"). Indeed, the

---

[6] The dissent characterizes our interpretation of the relevant statutes as "overly technical." We think not. The relocation notice does not, in itself, trigger consideration of child support. The text of the statute requires that a child support modification be requested by a party. This is not a technicality but a statutory requirement. We cannot ignore the plain meaning of a statute where the legislature has spoken clearly and unambiguously on the point in question. *See Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 947 (Ind. 2001).

relocation statute is written in the disjunctive; it speaks of motions by a party to modify child custody *or* child support. *See* I.C. §§ 31-17-2.2-1(b), 31-17-2.2-3(a)(2)(H). Our reading of the relocation statute also comports with prior case law. In this regard, we find instructive this court's opinion in *Smith v. Mobley*, 561 N.E.2d 504 (Ind. Ct. App. 1990), *trans. denied*.

[21] In *Smith*, the trial court ordered Smith, the mother, to pay child support to Mobley, the father. On January 3, 1989, Smith filed a relocation notice, and, on January 20, Mobley filed a petition to modify custody. *Id.* at 505, 508. Subsequently, on February 24, Smith lost her job, and she had no income after March 10. *Id.* at 508. On March 22, Smith sent a letter to the trial court "indicating that she was unemployed and asking whether she could have her support payments reduced." *Id.* The trial court took Smith's letter under advisement and subsequently held a hearing. *Id.* On September 29, the trial entered a modification decree, in which the court modified Smith's child support payments effective that same day. Smith appealed and argued that "the trial court erred in failing to make the reduction in her support payments retroactive to the time at which she became unemployed." *Id.* at 507.

[22] This court agreed with Smith and reversed the trial court. *Id.* at 508. However, on remand, we did not instruct the trial court to make Smith's reduced payments effective February 24, the date Smith lost her job, which was after Smith had filed her relocation notice and Mobley had filed his petition to modify custody. Instead, we construed the March 22 letter that Smith had sent to the trial court to be a petition to modify child support payments, and we

instructed the trial court to make the reduction of Smith's child support payments effective as of the date of that letter. *Id.* at 508. Notably, the letter "ask[ed] whether [Smith] could have her support payments reduced," and "it signaled to the court an apparent significant and continuing change in circumstances warranting a modification of the previous support order." *Id.*; *see also* I.C. § 31-16-8-1(b)(1) (stating that a child support order may be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable").

[23] The decision in *Smith* is significant. If a relocation notice, by itself, were sufficient to place the issue of child support in front of a trial court, then in *Smith* this court could have instructed the trial court on remand to make the modification of Smith's child support retroactive to the date she lost her job, February 24. That date was after Smith had filed her relocation notice, and "[a] trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify is filed, or any date thereafter." *Haley*, 771 N.E.2d at 752. Similarly, if a motion to modify child custody, even when considered together with a relocation notice, also gave a trial court the power to modify child support, we could have again instructed the trial court to make the modification retroactive to the date Smith lost her job because Smith lost her job after Mobley had filed a motion to modify child custody. We did not do so. In contrast, and tellingly, we construed Smith's March 22 letter to be a petition to modify child support and instructed the trial court to make the modification to Smith's support payments retroactive only to that day.

[24] Neither a relocation nor a change in child custody requires a child support modification. Both the *Smith* decision and our reading of the relocation statute comport with this understanding. Therefore, after a relocation notice is filed, if a party seeks a modification of an existing child support order that party must also file a petition to modify child support. A motion that makes other requests but does not expressly request a modification of child support is insufficient to place the issue of child support before the trial court for its modification. The statute unambiguously requires a "motion of a party." I.C. § 31-17-2.2-1. Here, again, the first motion to request a modification of child support was filed by Mother on March 6, 2013. As such, the trial court's order modifying Father's child support obligation retroactive to May 4, 2011, was an abuse of discretion. *See Carter*, 829 N.E.2d at 567.

[25] On April 15, 2011, when Father filed his relocation notice, as required by statute he notified Mother that she could file a petition to modify child support. It was not until March 6, 2013, that Mother filed a motion that could be construed as a petition to modify child support. While Father anticipated a possible modification of his child support payments, anticipation is not equivalent to the petition and actual notice required before the issue can be litigated. There is no evidence in the record before us that Husband waived or acquiesced in a retroactive child support order. Thus, we reverse and remand with instructions to the trial court to recalculate Father's arrearage from March 6, 2013.

[26] Reversed and Remanded.

FRIEDLANDER, J., concurs.

BAKER, J., dissents with separate opinion.

| | |
|---|---|
| David V. Taylor, | Court of Appeals Case No. |
| *Appellant-Respondent,* | 49A04-1502-DR-58 |
| v. | |
| Sheryl Crowder Taylor, | |
| *Appellee-Petitioner.* | |

**Baker, Judge, dissenting.**

I respectfully dissent. In my view, the majority's interpretation of the statutes at issue is overly technical. When Father filed his initial motion to modify child custody, he indicated his intent to move out of state and to seek custody of L.T. Prior to that time, the parties shared joint legal and physical custody of both children. Father's initial motion indicated that he anticipated a change in custody and/or child support. All of these factors, together, served to put the parties and the trial court on notice that child support was an issue. Moreover, that would logically be the case, given the dramatic changes in custody and geographical location that would occur if Father's motion was granted.

As the majority notes, the purpose of the statutorily required notice is "to provide the means for the trial court to modify visitation and support orders that may become unreasonable due to a long distance move by the custodial parent." *Fridley v. Fridley*, 748 N.E.2d 939, 941 (Ind. Ct. App. 2001). In this case, the trial court was aware that Father intended to relocate from Indiana to Alabama and that Father was seeking physical custody of L.T. Clearly, the parties' existing child support arrangement would need to be modified, notwithstanding the fact that neither party filed a motion to modify until March 6, 2013. Under these circumstances, I believe that the trial court was correct to order that Father's modified child support obligation was retroactive to May 4, 2011. Therefore, I would affirm the trial court and respectfully dissent from the result reached by the majority.