936 N.E.2d 1270 (2010)
In re PATERNITY OF C.H.,
K.L., Appellant-Petitioner,
v.
M.H., Appellee-Respondent.
No. 41A01-1003-JP-145.
Court of Appeals of Indiana.
November 15, 2010.
*1271 Kristy A. Lamm, Greenwood, IN, Appellant Pro-Se.

OPINION
BAKER, Chief Judge.
For nearly five years, the parents of C.H. have been unable to communicate and agree on custody and parenting time issues. Thus, the trial court appointed a parenting coordinator to assist in those matters. Moreover, the trial court deviated from the Indiana Parenting Time Guidelines (Guidelines) to give Father additional parenting time with C.H.
Appellant-petitioner K.L. (Mother) appeals the trial court's order regarding the parenting time schedule that existed between her and appellee-respondent M.H. (Father) as to their daughter, C.H. In particular, Mother argues that the schedule is "contrary to the law and effect of the facts presented to the trial court." Appellant's Br. p. 5. Mother also claims that the trial court abused its discretion in appointing a parenting coordinator in the matter. Concluding that the trial court properly exercised its discretion in appointing the parenting coordinator and finding no other error, we affirm.

FACTS
Mother and Father dated and began living together in September 2005. Thereafter, C.H. was born on December 5, 2005.[1] The couple separated on at least one occasion, but Father eventually moved back in with Mother. However, at some point, Father moved out again and rented his own apartment. Mother and Father currently live approximately twenty minutes from each other in the Indianapolis area.
A custody evaluator noted in a report dated January 14, 2009, that both Mother and Father described the communication between them as "very bad" and "horrible." Appellant's App. p. 40. Although the couple attempted to discuss parenting time matters by telephone and email, there was "not much success." Id. at 42. The custody evaluator determined that Mother should maintain primary physical custody of C.H., but she recommended that Father should have regular parenting time with C.H. that would include alternate weekends. On the other hand, the custody evaluator expressed concern about such an arrangement because of the communication issues between Mother and Father.
On October 15, 2009, the trial court conducted a hearing on Mother's petition to establish child support and parenting time. On December 2, 2009, the trial court ordered, among other things, that Mother should have sole legal custody of C.H., and that the parents should "share physical custody." Id. at 49. The trial court set forth the parenting days and times and where the exchanges should occur. Father was also ordered to pay support, and both were to provide health insurance for C.H.
On December 31, 2009, Mother filed a motion to correct error,[2] claiming that the calculation of child support was error and *1272 that the trial court erroneously determined that physical custody of C.H. should be "shared." Id. at 54-60. The trial court held a hearing on the motion to correct error on February 11, 2010. In its order of March 8, 2010, the trial court granted primary physical custody of C.H. to Mother and revised the parenting time schedule. The trial court also determined that it erred in not awarding Mother a credit for her duty to support a "prior born child." Id. at 76. Thus, the order establishing custody, child support, and parenting time was amended to provide, in part, that:
B.
2. Father shall enjoy parenting time every Monday and Tuesday overnight to Wednesday at 6:00 p.m., and alternate weekends from 6:00 p.m. on Friday to 9:00 a.m. on Monday. Neither party shall have extended parenting time during the summer, however, each of them shall have one (1) two week period of uninterrupted parenting time. Each party shall notify the other of his or her election as to this two-week period by April 1 of that calendar year. . . . All other provisions of the Indiana Parenting Time guidelines not in conflict with the provisions of this Order shall apply.
. . .
D.
5. Pursuant to the . . . Guidelines, Father shall pay . . . $75.00 per week for current child support. . . .
Id. at 76.
Finally, the trial court ordered Mother and Father to participate in "parenting time coordination" because they were unable to agree on parenting time issues, including the days and times when C.H. should be picked up and dropped off. Id. at 77. As a result, the trial court entered a subsequent order on March 9, 2010, appointing attorney Tracey Yeager as the parenting coordinator to "resolve conflicts between the Parties by recommendation, negotiation, education and discussion." Id. at 80. Each parent was ordered to pay 50% of Yeager's fees. Moreover, Yeager was to be reimbursed for her expenses.
In response, Mother filed an "Emergency Motion for Stay on the Court's Order Appointing Level II Parenting Coordinator Pending Appeal," and a "Motion for Revised Final Order containing Findings of Fact and Conclusions of Law" on March 9, 2010. Id. at 93. On March 31, 2010, Mother filed a Notice of Appeal from the order denying her motion to correct error that was dated March 8, 2010. Id. at 86.[3]

DISCUSSION AND DECISION
At the outset, we note that Father did not file an appellate brief in this case. When an appellee fails to file a brief on appeal, we may in our discretion reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. McGill v. McGill, 801 N.E.2d 1249, 1251 (Ind.Ct.App.2004). This rule was established for our protection so that we can be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. Id.

I. Parenting Time Plan
Mother first challenges the parenting time schedule that the trial court ordered. *1273 Specifically, Mother argues that there was no evidence supporting the "ultra-liberal [visitation]" schedule. Appellant's Br. p. 6. Moreover, Mother claims that the plan could not be followed because it was "confusing." Id.
We initially observe that in all parenting time controversies, courts are required to give foremost consideration to the best interests of the child. Downey v. Muffley, 767 N.E.2d 1014, 1017 (Ind.Ct. App.2002). When reviewing a trial court's determination of a parenting time issue, we grant latitude and deference to the trial court and will reverse only when the trial court abuses its discretion. Gomez v. Gomez, 887 N.E.2d 977, 981 (Ind.Ct.App. 2008). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id. If there is a rational basis for the trial court's determination, then no abuse of discretion will be found. Downey, 767 N.E.2d at 1017. Therefore, on appeal, it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. Duncan v. Duncan, 843 N.E.2d 966, 969 (Ind.Ct. App.2006). Further, we may not reweigh the evidence or judge the credibility of the witnesses. Downey, 767 N.E.2d at 1017.
We encourage parties to negotiate agreements regarding custody and parental visits. Keen v. Keen, 629 N.E.2d 938, 941 (Ind.Ct.App.1994). While the Guidelines provide courts with specific parenting times for a child of a given age, the Guidelines themselves clearly state that "the purpose of these guidelines is to provide a model which may be adjusted depending upon the unique needs and circumstances of each family." Indiana Parenting Time Guidelines, Preamble. Thus, the Guidelines "are not meant to foreclose parents from agreeing to, or the court from granting, such additional or reduced parenting time as may be reasonable in any given case." Id., cmt 2. Also, as acknowledged by the Specific Parenting Time Provisions, stipulated in Section 166 II, "the best parenting plan is one created by parents which fulfills the unique needs of the child and the parents."
In this case, the evidence established that Father was actively involved in C.H.'s upbringing. Tr. p. 101. At some point, Father left his job at Sam's Club and stayed home to care for C.H. and one of Mother's other children. Id. at 102. Father was a graduate of Butler University, and when he returned to work at a physician's office, his schedule was flexible and he testified that he would have no problem taking C.H. for several days every week and on alternating weekends. Id. at 114.
Father earned $24 per hour and consistently paid court-ordered child support. Id. at 115. Father lives in a two-bedroom apartment and C.H. has her own bedroom. Appellant's App. p. 39. Father testified that he would "love" to be able to spend more time with C.H. Tr. p. 120.
The evidence also showed that C.H. bonded well with both parents and needed both of them in her life. As a result, when faced with the flexible nature of the Guidelines, we cannot conclude that the trial court clearly erred in ordering the parenting time schedule in this instance. In short, we are not in a position to second-guess the trial court's assessment in this regard. Therefore, we decline to set aside the trial court's parenting time schedule.

II. Appointment of Parenting Time Coordinator
Mother next claims that the trial court erred in appointing a parenting time coordinator (parent coordinator). In essence, *1274 Mother argues that the trial court abused its discretion in appointing the parent coordinator because neither party requested or purportedly agreed to the appointment and there were no ongoing issues for the trial court to resolve regarding parenting time or custody matters.
We note that the appointment of a parent coordinator may facilitate a decision regarding visitation. Bacon v. Bacon, 877 N.E.2d 801, 804 (Ind.Ct.App.2007). In Gomez, we observed that a parent coordinator serves a role akin to that of an expert witness who reviews information relevant to the case and develops an opinion to be accepted or rejected by the trial court. 887 N.E.2d at 983. In accordance with the Guidelines, court action may be taken to force compliance with parenting time requirements. Ind. Parenting Time Guideline I 6(A)-(C).
In this case, Mother concedes that "the evidence is undisputed that [she] and Father are unable to communicate on any level to make day to day decisions together for the best interest of C.H." Appellant's Br. p. 5. Moreover, at the hearing on the motion to correct errors, Mother testified that there is "absolutely no communication between the two of [them]." Tr. p. 164. And Father testified that Mother is "chronically late on the pickup and drop off [days]." Id. at 173. On the other hand, both parents acknowledged that it was important for C.H. to have a good relationship with each other. Id. at 193.
Following the testimony, the trial court concluded that Mother and Father need a person "that can sit down with the calendars and say you are going to have her on this day, you are going to have her on this day, . . . [which] is something that a parenting coordinator is in a position to do." Id. at 195. And contrary to Mother's assertion that she did not agree to the appointment of a parent coordinator, she stated, "absolutely . . . that would be great," when the trial court announced that it was going to appoint a parent coordinator. Id.
When considering the spirit and intent of the Guidelines, the ongoing communication difficulties that Mother and Father have had regarding the parenting time schedule with C.H., and Mother's approval of the trial court's decision to appoint the Parent Coordinator, we conclude that the trial court did not err in appointing the parent coordinator.[4]
The judgment of the trial court is affirmed.
NAJAM, J., and MATHIAS, J., concur.
NOTES
[1] The paternity of C.H. was established in August 2008.
[2] Mother filed an amended motion to correct error "with addendum" on January 4, 2010, claiming that Father "manipulated Holiday Parenting Guidelines to extend his parenting time. . . ." Appellant's App. p. 60.
[3] As an aside, we note that the trial court denied Mother's motions for the "Emergency Stay" and her "Motion for Revised Final Order" on April 13, 2010, and Mother and Father were again ordered to participate in parenting time coordination. The following day, Mother filed a "Motion to Discharge Parenting Coordinator." Id. at 100. Following a hearing, the trial court denied Mother's motion on May 10, 2010.
[4] We are mindful of this court's decision in Bacon, where we determined that the trial court's appointment of a parent coordinator was not a final, appealable judgment because that appointment did not dispose of any claims between the parties. Thus, we dismissed the appeal in light of this sole issue that was raised. Id. at 805. Unlike the circumstances in Bacon, Mother is appealing the appointment of the parent coordinator in conjunction with the parenting time schedule that the trial court established. Thus, our review of this issue is not barred by the holding in Bacon.