Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 08 2012, 10:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAWN M. BOYD**
Myers Tison Hockemeyer & McNagny
Columbia City, Indiana

ATTORNEY FOR APPELLEE:

**SHAWN D. BLUMENTHAL**
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ELIZABETH A. MCQUINN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1107-DR-689 |
| | ) | |
| MICHAEL T. MCQUINN, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes , Judge
Cause No. 29D03-0904-DR-543

**February 8, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Elizabeth McQuinn ("Mother") appeals the Hamilton Superior Court's order modifying Michael McQuinn's ("Father") parenting time and finding Mother in contempt of court for interfering with Father's parenting time. Concluding that the trial court acted within its discretion when ordering the parties to share joint physical custody of their children and in holding Mother in contempt, we affirm.

**Facts and Procedural History**

In March 2010, the parties' marriage was dissolved in Hamilton Superior Court. The dissolution decree incorporated a mediated settlement agreement containing provisions for custody and parenting time with regard to the parties' three minor children. Specifically, the parties agreed that Mother would have primary physical custody of the children, but the parties would share joint legal custody.

Concerning parenting time, the parties' agreed that Father would have alternating weekends from Friday after school through Monday morning. And every other week, Father's parenting time included Tuesdays as well. In sum, in a four-week period, Mother had parenting time sixteen days to Father's twelve days. There were also specific provisions in the agreement concerning the parties' son's participation in Boy Scouts. Finally, the parties agreed to place the children in counseling with a counselor of Father's choosing. Approximately five months after the parties' marriage was dissolved, because the parties had several parenting time conflicts and disagreements concerning their interpretation of the mediated settlement agreement, the trial court appointed a parenting time coordinator to address their issues.

2

On November 15, 2010, Mother filed a petition for a protective order against Father and request for a hearing. After hearings held on Mother's petition for a protective order on December 6 and 20, 2010, the trial court issued a protective order on December 21, 2010.

Four days after she filed her petition for a protective order, Mother filed a petition to modify custody and parenting time. In response, Father filed a petition to modify parenting time and child support. Father also filed a motion for rule to show cause in which he alleged that Mother interfered with his parenting time and denied him make-up parenting time.

The parenting time coordinator filed his binding recommendation report on December 23, 2010. Thereafter, the trial court held hearings on the parties' pending motions on May 9 and 10, 2011. At the hearing, Mother alleged that Father endangered or failed to supervise the children on several occasions, and as a result, the children were injured. Specifically, the parties' son, J.M., suffered a severe sunburn during a vacation, and the parties' oldest daughter, M.M., ran into a barbed wire fence injuring her lip and face. Mother also accused Father of causing a vaginal injury to their youngest daughter, H.M. Father alleged that Mother deliberately interfered with his parenting time.

On July 5, 2011, the trial court entered findings of fact and conclusions of law resolving the issues raised in the parties' numerous pleadings, which provide in part as follows:

> 2. Numerous provisions of the parties' original agreement have been modified by subsequent litigation. By an order issued July 15, 2010, the parties were appointed Dr. Randall Krupsaw as a Level II Parenting

3

Coordinator. Furthermore, a Permanent Order for Protection was issued on December 21, 2010 by Magistrate David Najjar. Binding recommendations have also been issued by Dr. Krupsaw however, the custody and child support have remained as laid out in the Mediated Settlement Agreement. Only minor changes to parenting time have changed, such as, when kids do not go to school they are to follow the times laid out in the Mediated Settlement Agreement as if they attended school and when school is not in session the exchange is to take place at 9:00am when dealing with an exchange in the morning or at 3:25pm when dealing with an exchange in the afternoon. The right of first refusal has also been eliminated as stated in the Binding Recommendation and ruled upon on January 24, 2011 by Magistrate Najjar. Furthermore, [Father] has the ability to choose the counselor for the children.

***

4. [Mother] now seeks to modify custody and parenting time. Her reasons for this motion are because of [Father's] anger issues, joint custody is not working, [Father] neglects the children, [Father's] financial instability, [Father's] daughter is living with [Mother], [Father's] girlfriend is living with him and that the children need stability and structure. It is the children's best interests, and not the wishes and desires of either [Father or Mother], that will govern the custody and parenting time rulings in this Order.

5. [Mother's] motion to modify custody should be granted. Her motion to modify custody should be granted because she has shown that at least one statutory factor under I.C. § 21-17-2-8 justifies the modification. Joint legal custody might have been appropriate when the parties divorced, but it clearly is not appropriate today, given the considerable animosity that now exists between the parties and has existed for some time. There is clearly a high level of conflict and the parties find new ways to fight with one another with matters relating to their children. A modification of custody is also appropriate now because [Mother's] wishes have changed since the divorce, such that she now wants sole legal custody. Although, neither option for the children's sole legal custodian is ideal, the Court concludes that vesting sole legal custody in [Mother] is in the children's best interests, and that any or all of the following substantial changes since the entry of the dissolution decree justify the modification.

    A. Child-rearing has become a battleground.

    B. [Mother's] wishes have changes since the divorce, such that she now wants sole legal custody.

    C. [Father's] failures to get the children in counseling and in fact removing them from counseling with Dr. Souder, as found by the guardian ad litem, greatly affects the children's mental health which satisfies I.C. 31-17-2-8(6)[.]

4

6. [Mother's] motion to modify parenting time and to request supervised parenting time for [Father] should be denied. Modification of parenting time should occur if it serves the best interests of the child however; the court shall not restrict a parent's parenting time rights unless it might endanger the child's physical health or emotional development. For the following reasons [Father's] parenting time should not be lessened or supervised.

      A. There is not substantial evidence to show that [Father] endangers the children's physical, mental, or emotional health. There is speculation but that is not enough under Indiana law.

      B. While [M.M] did run into a barbed wire fence and injure her lip, no evidence came forward that [Father] was negligent in supervising [M.M.].

      C. While DCS did receive a request to investigate a sunburn, the evidence at trial indicate[s] that this investigation results as much from an overreaction by Mom and medical officials as it does from failure of care by father.

      D. While [H.M.] did have a vaginal injury, there is no evidence to show that [Father] caused or was negligent in supervising [H.M.] when this injury happened.

      E. While A.M.[1] testified that [Father] touched her inappropriately by tickling in [sic] private parts and moving bikini top over to see sun burn, there is no evidence to substantiate the claim. There is not enough evidence to supervise or restrict [Father's] parenting time of the children and the custody and parenting time of [A.M.] is not at issue in this case.

7. [Father's] motion to modify parenting time should be granted. The parents' continual issues over parenting time as discussed throughout the trial and specifically during [Father's] testimony, show that the current parenting time arrangement as set out by the Mediated Settlement Agreement and modified slightly by the Binding Recommendations of Dr. Krupsaw are not working and need to be changed. [Father] is entitled to reasonable parenting time unless he endangers the children's physical, mental or emotional health. The court therefore grants [Father's] motion to modify parenting time and orders a 50/50 parenting time split between the parties. The court orders that [] each parent will have one week with the kids and then the other party will have the following week. This will be done to simplify the parenting time split and to reduce the changes for conflict between the parties when exchanging the kids. It is in the best interest of the children to have a normal and regular schedule with each of

---

[1] A.M. is Father's child from a prior relationship.

their parents and to have as little conflict between the parents as possible. Exchanges shall begin at 6:00 P.M. Sunday, July 10, 2011.

8. [Father's] request to reinstate the right of first refusal should be denied and the right of first refusal should continue to be eliminated. While the right of first refusal is a good right to have and if used properly can be in the best interest of the children; these parties have proven that they are incapable of using the right of first refusal in a way that is in the best interest of the children. They have instead used the right of first refusal as another issue that they can battle over and fight with each other about. This does not mean that the right of first refusal will never be allowed in the future but until these parties can act in a manner that would allow them to use the right of first refusal for the children's best interest and not just another issue to argue about, the court orders that there be no right of first refusal for either party.

*** 

10. [Mother] should be held in contempt for interfering with [Father's] parenting time. There is abundant evidence in the record that shows that [Mother] continually violated the Mediated Settlement Agreement with regards to parenting time and Dr. Krupsaw found in the Binding Recommendation filed February 24, 2011 that [Father] did not receive regular parenting time on 11/22/10 and 12/10/10, and from 12/11/10 to 12/14/10. Both parties agree that [Father] was entitled to make-up parenting time for those times. While it is true that [Mother] has given [Father] make-up time for those instances she has not purged herself of contempt as she has failed to give [Father] make up time for February 22, 2011, in which he was not granted four hours of make-up time. As a result of [Mother's] violation of parenting time additional expenses have been incurred with Dr. Krupsaw. In order to purge herself of contempt, [Mother] shall pay the balance of Dr. Krupsaw's fees remaining unpaid at the time of the hearing herein.

Appellant's App. pp. 26-33 (internal record and case citations omitted). In its order, the trial court also denied Father's motion to modify his child support obligation. Mother now appeals the trial court's decision to increase Father's parenting time and its contempt ruling.

**Standard of Review**

When the trial court enters findings of fact sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue

6

upon which the court has not found. Brinkmann v. Brinkmann, 772 N.E.2d 441, 444 (Ind. Ct. App. 2002). The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. Hanson v. Spolnik, 685 N.E.2d 71, 76 (Ind. Ct. App. 1997), trans. denied. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. Id. at 76–77. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. at 77. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings. Id.

## I. Parenting Time

Our courts encourage parties to negotiate agreements regarding custody and parental visits as the parties initially did in this case. In re Paternity of C.H., 936 N.E.2d 1270, 1273 (Ind. Ct. App. 2010), trans. denied.

> While the [Parenting Time] Guidelines provide courts with specific parenting times for a child of a given age, the Guidelines themselves clearly state that "the purpose of these guidelines is to provide a model which may be adjusted depending upon the unique needs and circumstances of each family." Thus, the Guidelines "are not meant to foreclose parents from agreeing to, or the court from granting, such additional or reduced parenting time as may be reasonable in any given case." Also, as acknowledged by the Specific Parenting Time Provisions, stipulated in Section 166 II, "the best parenting plan is one created by parents which fulfills the unique needs of the child and the parents."

Id. (internal citations omitted).

In their mediated settlement agreement, the parties agreed that Mother would have primary physical custody of the children, but the parties would share joint legal custody. Per the agreement, every four weeks, Father had parenting time with the children for 12

7

days. In the appealed order, the trial court awarded legal custody of the children to Mother, but increased Father's parenting time such that he now enjoys fifty percent of all parenting time.[2] Consequently, although the trial court's order indicates only an increase in parenting time, because Father's parenting time was increased to seven overnight stays during any given two-week period, the court ordered a de facto modification of physical custody to joint physical custody. See Julie C. v. Andrew C., 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010).

We review custody modifications for an abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002). In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking a subsequent modification bears the burden of demonstrating that the existing custody should be altered. Id. When reviewing a trial court's decision modifying custody, we may not reweigh the evidence or judge the credibility of the witnesses. Browell v. Bagby, 875 N.E.2d 410, 412 (Ind. Ct. App. 2007), trans. denied. Instead, we consider only the evidence most favorable to the judgment and any reasonable inferences therefrom. Id. Importantly, we observe that our

---

[2] The first issue appealed in Mother's Appellant's brief is that the trial court abused its discretion when it denied her petition to modify Father's parenting time requesting that Father have supervised parenting time or modify his parenting time to the schedule established in the Parenting Time Guidelines. Because we affirm the trial court's decision to modify physical custody to joint physical custody, we need not address this issue separately. But we do note that Mother's argument that the evidence established that Father endangers the children's physical, mental, or emotional health, is merely a request to reweigh the evidence and the credibility of the witnesses, which our court will not do. Moreover, the trial court's findings concerning the injures to the children while in Father's care are supported by the evidence. For these same reasons, we need not specifically address Mother's arguments concerning A.M.'s (Father's oldest daughter) recent accusations that Father inappropriately touched A.M. It was within the trial court's broad discretion to weigh that testimony in rendering its judgment.

court's deference to the trial court's decision to modify custody is "a reflection, first and foremost, that the trial judge is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children-the kind of qualities that appellate courts would be in a difficult position to assess." MacLafferty v. MacLafferty, 829 N.E.2d 938, 940–41 (Ind. 2005).

Indiana Code section 31–17–2–21 provides that a trial court may not modify a child custody order unless (1) the modification is in the best interests of the child and (2) there is a substantial change in one or more of the factors that the court may consider under Indiana Code section 31–17–2–8. Section 31–17–2–8 provides that the trial court is to consider all relevant factors, including:

(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
    (A) the child's parent or parents;
    (B) the child's sibling; and
    (C) any other person who may significantly affect the child's best interests.
(5) The child's adjustment to the child's:
    (A) home;
    (B) school; and
    (C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian . . .

Because the trial court did not consider its decision to award the parties equal parenting time a modification of physical custody, the court did not enter any specific

9

findings concerning the statutory factors enumerated in section 31-17-2-8.[3] But after reviewing the record before us, we conclude that the trial court's decision to order joint physical custody is supported by the evidence.

First, we observe that Father's wishes have changed since the parties entered into the Mediated Settlement Agreement. In his petition to modify parenting time and at the hearing, Father requested that the court order the parties to share parenting time equally by alternating weeks. Tr. p. 37.

Moreover, the parties' agreed parenting time schedule provided for in the Settlement Agreement was confusing and created a great deal of conflict between the parties. As the trial court observed:

> The parents' continual issues over parenting time as discussed throughout the trial and specifically during [Father's] testimony, show that the current parenting time arrangement as set out by the Mediated Settlement Agreement and modified slightly by the Binding Recommendations of Dr. Krupsaw are not working and need to be changed.

Appellant's App. p. 31. Regrettably, the children have been witness to their parents' inability to communicate without conflict and their lack of flexibility. After reviewing the record, we conclude that the evidence supports the trial court's finding that "[i]t is the best interests of the children to have a normal and regular schedule with each of their parents and to have as little conflict between the parents as possible." Id. For these reasons, we affirm the trial court's decision to modify the physical custody arrangement to joint physical custody.

---

[3] But when it awarded sole legal custody to Mother, the court did enter findings stating which statutory factors supported the modification.

## II. Contempt

A determination of whether a party is in contempt of court is a matter within the trial court's sound discretion, and we reverse only where there has been an abuse of that discretion. Richardson v. Hansrote, 883 N.E.2d 1165, 1171 (Ind. Ct. App. 2008). Our review is limited to considering the evidence and reasonable inferences drawn therefrom that support the trial court's judgment. Piercey v. Piercey, 727 N.E.2d 26, 31 (Ind. Ct. App. 2000).

Contempt of court "involves disobedience of a court which undermines the court's authority, justice, and dignity." Srivastava v. Indianapolis Hebrew Congregation, Inc., 779 N.E.2d 52, 60 (Ind. Ct. App. 2002), trans. denied. There are two types of contempt—direct and indirect. Id. Mother was found to be in indirect contempt, which involves actions outside the trial court's personal knowledge. In re Contempt of Wabash Valley Hosp., Inc., 827 N.E.2d 50, 61–62 (Ind. Ct. App. 2005). "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt." Francies v. Francies, 759 N.E.2d 1106, 1118 (Ind. Ct. App. 2001), trans. denied.

The trial court determined that Mother was in contempt for failing to allow Father to make up missed parenting time, and specifically found:

> Mother] should be held in contempt for interfering with [Father's] parenting time. There is abundant evidence in the record that shows that [Mother] continually violated the Mediated Settlement Agreement with regards to parenting time and Dr. Krupsaw found in the Binding Recommendation filed February 24, 2011 that [Father] did not receive regular parenting time on 11/22/10 and 12/10/10, and from 12/11/10 to 12/14/10. Both parties agree that [Father] was entitled to make-up parenting time for those times. While it is true that [Mother] has given [Father] make-up time for those instances she has not purged herself of

11

contempt as she has failed to give [Father] make up time for February 22, 2011, in which he was not granted four hours of make-up time. As a result of [Mother's] violation of parenting time additional expenses have been incurred with Dr. Krupsaw. In order to purge herself of contempt, [Mother] shall pay the balance of Dr. Krupsaw's fees remaining unpaid at the time of the hearing herein.

Appellant's App. p. 33.

There is evidence in the record that supports the trial court's finding that Mother failed to make reasonable arrangements for Father to make up four hours of parenting time on February 22, 2011. Mother's argument to the contrary is merely a request to reweigh the evidence and the credibility of the witnesses, which our court will not do. For this reason, we conclude that the trial court did not abuse tis discretion when it found Mother in contempt.[4]

But Mother also argues that the trial court abused its discretion when it ordered her to pay the balance of Dr. Krupsaw's fees that remained unpaid on the date of the hearing because the penalty is punitive and she was not afforded the opportunity to purge herself of contempt.

> A trial court's inherent civil contempt power is both coercive and remedial in nature. "Contempt is for the benefit of the party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party." "The primary objective of a civil contempt proceeding is not to punish the contemnor [sic], but, . . . to coerce action or to compensate the aggrieved party," and therefore, "punitive damages are not properly imposed in a civil contempt proceeding."

---

[4] Mother's claim that the trial judge was biased against her is nonsensical and not supported by our review of the record. The trial court's comments about the protective order Mother obtained against Father were made to reflect the trial court's concern that Mother is using the protective order "as a sword and not a shield." Tr. p. 383. There was evidence in the record from which a reasonable inference could be made that Mother was using the protective order to interfere with Father's parenting time by preventing him from attending school events and doctor's appointments.

12

Mitchell v. Mitchell, 785 N.E.2d 1194, 199 (Ind. Ct. App. 2003) (internal citations omitted). Moreover, a contempt order which neither coerces compliance with a court order nor compensates the aggrieved party, and does not offer an opportunity for the offender to purge himself may not be imposed in a civil contempt proceeding. Paternity of M.P.M.W., 908 N.E.2d 1205, 1209 (Ind. Ct. App. 2009).

The evidence presented supports a reasonable inference that Mother's interference with Father's parenting time caused the parties to incur additional parenting time coordinator fees. By ordering Mother to pay the balance owed to Dr. Krupsaw, the trial court is compensating Father by absolving him of his responsibility to pay half of Dr. Krupsaw's fees. Because Father owes Dr. Krupsaw money for attempting to secure his parenting time and for pursuing his contempt petition, the trial court's decision to order Mother to pay Dr. Krupsaw's fees was a "proper exercise of the court's inherent authority to compensate an aggrieved party." See MacIntosh v. MacIntosh, 749 N.E.2d 626, 631 (Ind. Ct. App. 2001), trans. denied. And the trial court's order provides that Mother may purge herself of contempt by paying Dr. Krupsaw's fees. For all of these reasons, we conclude that the trial court acted within its broad discretion when it ordered Mother to pay Dr. Krupsaw's fees because of her contemptuous acts.

**Conclusion**

We affirm the trial court's modification of custody to joint physical custody because shared parenting time between the parties is in the best interests of the children.

13

And the trial court did not abuse its discretion when it found Mother in contempt and ordered her to pay the parenting coordinator's unpaid fees.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.