## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 12 2015, 10:26 am
CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Michael L. Turner | Gregory F. Zoeller |
| Ossian, Indiana | Attorney General of Indiana |
| | Frances Barrow |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael L. Turner, | March 12, 2015 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 90A04-1404-DR-190 |
| v. | Appeal from the Wells Circuit Court. |
| Jennifer D. Pence, | The Honorable Kenton W. Kiracofe, Judge. |
| *Appellee-Respondent.* | Cause No. 90C01-0509-DR-49 |

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Petitioner, M.L.T. (Father), appeals the trial court's Order, denying his petition to modify child custody, child support, and parenting time.

[2] We affirm.

## ISSUES

[3] Father raises eleven issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the trial court abused its discretion by denying Father's petition to modify child custody, child support, and parenting time;

(2) Whether the trial court erred by failing to address a subsequently filed petition to modify child support; and

(3) Whether the trial court abused its discretion by holding Father in contempt.

## FACTS AND PROCEDURAL HISTORY

[4] On September 8, 2005, Father filed a petition to dissolve his five-year marriage to Appellee-Respondent, J.D.P. (Mother). Throughout the marriage, the parties lived in Wells County, Indiana. They have two children together: a daughter, M.T., born July 5, 2000, and a son, G.T., born July 5, 2004 (collectively, Children). On December 1, 2006, pursuant to a Marital Settlement Agreement (Agreement), the trial court issued a decree of dissolution.

[5] The Agreement provided that Father and Mother would share joint legal custody of the Children, with Mother having primary physical custody. Father would exercise parenting time "at all reasonable times agreed upon by the parties" or, in the event of a disagreement, in accordance with the Indiana Parenting Time Guidelines (Guidelines). (Appellant's App. p. 6). By November of 2008, the Children were spending equal time with each parent. Thereafter, the parties' co-parenting relationship began to deteriorate. At some point, Father became delinquent in his child support obligation, so Mother applied for enforcement assistance through the Title IV-D Child Support Program (Title IV-D Program).

[6] On January 16, 2009, Father filed a petition to modify custody and child support and to establish parenting time (Petition #1), as well as a verified petition for contempt against Mother. On June 15, 2009, the trial court held a hearing on Father's Petition #1 and the contempt motion. Taking the matter under advisement, the trial court ordered the parties to submit briefs concerning their rights and obligations as joint custodians and addressing the issue of contempt. Neither party filed a brief, and no further action was taken.

[7] More than a year later, on July 21, 2010, Father filed a second petition to modify child support and parenting time (Petition #2), and a hearing was held on March 29, 2011. On June 8, 2011, the trial court issued an order, denying Petition #2. Also, after realizing that there had never been a ruling on Father's Petition #1, the trial court denied the modification and contempt requests based on the parties' failure to submit the briefs as ordered.

[8] In August of 2011, due to a strained relationship between Mother and eleven-year-old M.T., the parties orally agreed that M.T. would live with Father for six months, during which time Mother would exercise parenting time. After the six-month period expired, M.T. continued to live with Father. Despite Mother's efforts to exercise parenting time, M.T. consistently refused to go.

[9] On September 4, 2012, Mother filed a notice of intent to relocate to another town in Wells County. On October 30, 2012, Father filed an objection to the relocation and also filed another petition to modify child custody, child support, and parenting time (Petition #3). On November 26, 2012, Mother filed a petition to enforce her right to have parenting time with M.T., and on January, 22, 2013, she filed a citation for contempt against Father. On March 15, 2013, the trial court held a hearing on Mother's petition to enforce parenting time. On May 6, 2013, the trial court issued an order for parenting time, mediation, and for Mother and M.T. to participate in joint therapy.

[10] On June 5, 2013, the Wells County Title IV-D Program filed a petition to modify child support (Title IV-D Petition). On August 5, 2013, the trial court held a hearing on the issue of Mother's proposed relocation. On August 9, 2013, the trial court issued an order and, finding that Mother had established a good faith, legitimate purpose for relocating eighteen miles away, approved her request to relocate and to enroll G.T. in a new school.

[11] On November 1 and December 17, 2013, the trial court conducted a hearing on Father's Petition #3 and Mother's contempt petition. Each parent sought sole

legal custody and primary physical custody of the Children. Between the hearing dates, on November 25, 2013, Father filed a petition for contempt against Mother for denying him parenting time with G.T. After Father presented evidence on his contempt petition, Mother moved for a "directed verdict[,]" which the trial court granted. (Tr. p. 311). On January 24, 2014, the trial court issued its Order, granting Mother sole legal and primary physical custody of the Children, awarding Father with parenting time in accordance with the Guidelines, and declining to modify the amount of Father's child support obligation. The trial court also held Father in contempt of court for interfering with the relationship between Mother and M.T. and directed him to pay $1,000 toward Mother's attorney fees. On February 24, 2014, Father filed a motion to correct error. On March 27, 2014, the trial court denied Father's motion and, finding it to be "pointless, without merit, submitted in bad faith, mocks the [c]ourt, and is not supported by law or substantive facts[,]" ordered him to pay an additional $500 toward Mother's attorney fees. (Appellant's App. p. 98).

[12] Father now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[13] At the outset, we note that Mother has not filed an appellee's brief. However, the State—on behalf of the Title IV-D Program—filed a brief solely regarding the issue of child support. Accordingly, as to the issues not covered by an appellee's brief, our court applies "a less stringent standard of review with

respect to showings or reversible error." *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 221 (Ind. Ct. App. 2006). Thus, we may reverse the trial court's judgment if Father's brief "presents a prima facie case of error." *Id.* Prima facie error means "error at first sight, on first appearance, or on the face of it." *Id.*

## II. *Petition #3*

Father first claims that the trial court abused its discretion by denying his Petition #3 to modify child custody, child support, and parenting time. We find that Father's claim lacks well-organized, cogently-reasoned arguments and is entirely devoid of citations to authority. Ind. Appellate Rule 46(A)(8))(a). Nevertheless, we recognize the significant interests at stake in family law matters and the importance of finality. *See Baxendale v. Raich*, 878 N.E.2d 1252, 1258 (Ind. 2008). Therefore, to the extent we are able, we will address Father's issues.[1]

## A. *Custody Modification*

We review custody modifications for an abuse of discretion, with a "preference for granting latitude and deference to our trial [courts]." *Kirk v. Kirk*, 770

---

[1] The State argues that Father has waived the issue of whether the trial court abused its discretion in declining to modify his child support obligation. We agree. In addition to being unsupported by cogent reasoning or citations to authority, we find that Father's argument is simply a reiteration of his parenting time challenge. *See* App. R. 46(A)(8)(a). Similarly, we find that Father has waived his assertion of error concerning secondary health insurance and his "burden to insure [M]other's other household members" as such claim is wholly unsupported by the record. (Appellant's Br. p. 39). We also find that Father has waived his claim that the trial court "erroneously did not grant [him] a credit for child support for the [two] year's [*sic*] daughter M.T. resided with [him]" as he did not raise the issue before the trial court. (Appellant's Br. p. 40).

N.E.2d 304, 307 (Ind. 2002). We will find an abuse of discretion if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Haley v. Haley*, 771 N.E.2d 743, 747 (Ind. Ct. App. 2002). We do not reweigh evidence or assess the credibility of witnesses, and we consider only the evidence most favorable to the trial court's decision. *Id.* The party seeking modification bears the burden of proving that the existing custody order should be altered. *Id.* To warrant reversal on appeal, the evidence "must positively require the conclusion contended for by [the] appellant." *Bettencourt v. Ford*, 822 N.E.2d 989, 997 (Ind. Ct. App. 2005).

[16] In order to modify a custody order, the trial court must find that modification would be in the child's best interest and that there has been a substantial change in circumstances since the initial custody order. Ind. Code § 31-17-2-21(a). In this case, notwithstanding whether there was a substantial change in circumstances, the trial court found that "[i]t is not in the best interests of the parties' minor [C]hildren that [physical] custody be modified." (Appellant's App. p. 38). In determining a child's best interest, the trial court must "consider all relevant factors," including:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>     (A) the child's parent or parents;
>     (B) the child's sibling; and
>     (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:
   (A) home;
   (B) school; and
   (C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian .
. . .

I.C. § 31-17-2-8. Father now argues that the evidence concerning the Children's best interest weighs in favor of awarding him with primary physical custody. In particular, he cites to the testimony of thirteen-year-old M.T., who stated that she wished to live with Father, as well as other evidence of Mother and M.T.'s strained relationship "based on historic verbal emotional abuse." (Appellant's Br. p. 33). We disagree.

[17] Considering the evidence most favorable to the judgment, we cannot say that the trial court abused its discretion in ordering that Mother maintain primary physical custody. It is apparent that both parents are fit, love the Children, and wish to have custody. However, because G.T. has been primarily living with Mother and M.T. has been living with Father, Father's wife testified that the Children do not have a close relationship anymore. While there has undisputedly been a strain in the relationship between Mother and M.T., the court-appointed counselor, Donald Smith (Counselor Smith), opined that Father had been poisoning M.T.'s mind against Mother. Counselor Smith recommended that Mother receive custody of the Children. Additionally, Mother's husband (Step-Father) and the Children's maternal grandmother (Grandmother) testified that in the time she had been living with Father, M.T.

became withdrawn and has fewer friends, and she dyes her hair black and dresses in all black. Step-Father also testified that it seemed like "M.T. is walking on egg[]shells between the two parents[,]" but that during her visits with Mother, she had started to smile more, and "you can see glimpses of the girl that, you know, that three years ago I knew." (Tr. p. 287).

[18] The evidence further establishes that Mother is devoted to the Children's education. During the hearing, Mother explained G.T.'s struggles in school and her efforts to keep him caught up. Due to his young age and based on the recommendations of his teachers, Mother thought it would benefit G.T. to repeat the third grade in a new school. Grandmother testified that Mother makes the Children's homework a priority. Mother and Grandmother both expressed concern that Father acts more like a friend than a parent, and that he "doesn't want to tell [the Children] no." (Tr. p. 299). Mother added that Father allows M.T. to "rule[] the roost," as evidenced by the fact that he consistently allowed her to forego Mother's parenting time. (Tr. p. 244). A friend of the family testified that she "never [saw] Father] do much parenting[,]" but that Mother is "a nurturing mother, a disciplinarian, raising her kids up right so they become better young adults." (Tr. pp. 302-03). The foregoing evidence sufficiently establishes that a modification of custody would not be in the Children's best interest. Father's argument is essentially a request that we reweigh the evidence, which we will not do. The trial court considered and weighed all of the evidence, and we cannot say that its decision is contrary to the logic and effect of the facts before the court.

In turn, the trial court found that it would serve "the best interest of the parties' minor [C]hildren that legal custody [be] modified and that [M]other shall have sole legal custody of the minor [C]hildren forthwith." (Appellant's App. p. 38). In deciding whether an award of joint legal custody would be in a child's best interest, the trial court must consider:

> (1) the fitness and suitability of each of the persons awarded joint custody;
> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
> (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
> (4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;
> (5) whether the persons awarded joint custody:
>     (A) live in close proximity to each other; and
>     (B) plan to continue to do so; and
> (6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

I.C. §§ 31-17-2-13; -15. Father contends that "[b]oth parties had admitted to communication issues but no evidence had shown the [C]hildren's needs not met to an extent [M]other should have sole legal custody and to exclude [F]ather from sole or joint legal custody." (Appellant's Br. p. 35). We disagree.

The parent having *legal* custody of his or her child is entitled to "determine the child's upbringing, including the child's education, health care, and religious training." I.C. § 31-17-2-17(a). As such, it is well established that if the parents "have made child-rearing a battleground, then joint custody is not appropriate." *Carmichael v. Siegel*, 754 N.E.2d 619, 635 (Ind. Ct. App. 2001). In this case, it

cannot be disputed that the hostility between the parties has made joint legal custody unfeasible.

[21] Furthermore, we cannot say that the trial court erred in determining that sole legal custody should be with Mother instead of Father. The evidence reveals numerous instances in which Father—despite the Agreement for joint legal custody—unilaterally made significant decisions regarding the Children's upbringing. For example, without Mother's knowledge or consent, Father hired a tutor for G.T. and requested special testing for him through the school; he began administering an herbal sleep aid to M.T.; and Father's wife (then fiancé) signed a consent form under the pretense that she was M.T.'s legal guardian in order for M.T. to get her ears pierced. Father also concealed the fact that he was taking M.T. to see a child psychologist in addition to court-appointed Counselor Smith. Regardless of the adequacy of each party's individual parenting skills, Father and Mother conceded that they are unable to communicate and work together. Therefore, we find no abuse of discretion in the trial court's modification of legal custody. *See id.*

### B. *Parenting Time*

[22] Father contends that he "has a hard time in light of the events and evidence of him spending half of the time with his [C]hildren for [five] years straight and [two] years of nearly 100% of time with [M.T.] that the court could award [him] the minimal amount of parenting time or how that would be in the [C]hildren's best interest." (Appellant's Br. p. 36). "[I]n all parenting time controversies, courts are required to give foremost consideration to the best interests of the

child." *In re Paternity of C.H.*, 936 N.E.2d 1270, 1273 (Ind. Ct. App. 2010), *reh'g denied*; *trans. denied*. We will uphold the trial court's determination of parenting time absent an abuse of discretion. *Id.*

[23] When Father and Mother divorced in 2006, their Agreement provided that if they could not reach an agreement on parenting time, the Guidelines would govern. Subsequent to the dissolution, both parents remained actively involved in the Children's lives, and for a period of time, they equally divided their time with the Children. Nevertheless, the record clearly establishes that the parties have a longstanding inability to communicate and cooperate in most matters related to the Children.

[24] Pursuant to Indiana Code section 31-17-4-1(a), a non-custodial parent is entitled to "reasonable parenting time rights." Here, based on the parties' request for a clear-cut parenting time arrangement, the trial court granted Mother with primary physical custody and ordered Father to exercise parenting time as set forth in the Guidelines. Although designed to be flexible where the parties are able to cooperate, the Guidelines "represent the minimum time a parent should have to maintain frequent, meaningful, and continuing contact with a child." Ind. Parenting Time Guideline pmbl. In light of the persistent discord between Father and Mother, we find no basis for second-guessing the trial court's determination of a reasonable parenting time arrangement based on the Guidelines. *See Paternity of C.H.*, 936 N.E.2d at 1273.

### III. *Title IV-D Petition*

[25] Father next claims that the trial court "created a legal, procedural error by not processing" the Title IV-D Petition. (Appellant's Br. p. 37). Specifically, Father contends that "[o]n June 5, 2013[,] [he] filed a separate Petition for Modification . . . at the request and through the Title IV-D Prosecution Office." (Appellant's Br. p. 37). He "believes the court should have done the math and issued a temporary reduction in support due to the circumstances or understandably rap [*sic*] this filing with the pending [Petition #3,] but to do nothing with it seems to be very wrong." (Appellant's Br. p. 38). Notwithstanding the lack of cogent reasoning and authoritative support in Father's argument, we find that his claim fails on the merits.

[26] Our court recently noted that the "express purpose of Title IV-D . . . is to enforce support obligations owed to custodial parents and their children." *In re Paternity of D.M.*, 9 N.E.3d 202, 207 (Ind. Ct. App. 2014), *reh'g denied*. In furtherance of this duty, the Title IV-D Program may—as it did in the present case—pursue modification of a support order. *Collier v. Collier*, 702 N.E.2d 351, 354-55 (Ind. 1998). Here, it is clear that the Title IV-D Program—*not* Father— filed the Title IV-D Petition for child support modification on June 5, 2013. Then, during the August 5, 2013 hearing on Mother's relocation, the Title IV-D Program explained that it had filed the Title IV-D Petition "in error" because Father had already filed for modification under Petition #3. (Tr. p. 118). As the trial court found, it "is unclear why Father would file any motions on behalf of the Title IV-D [Program] as the [c]ourt assumed that Title IV-D [Program]

was capable of filing their own motions as they are represented by two attorneys." (Appellant's App. p. 98).

[27] Moreover, in denying Father's motion to correct error, the trial court clarified that it "addressed support of the minor [C]hildren in its January 24, 2014 Order and [d]enied Father's [m]otion regarding the same. As Father's [Petition #3] and [the Title IV-D Petition] are of the same subject matter, the [c]ourt deemed the Petition filed by Title IV-D denied." (Appellant's App. p. 98). Accordingly, contrary to Father's contention, we find that the trial court sufficiently addressed the Title IV-D Petition, the denial of which the State does not challenge on appeal and which Father has no standing to challenge.

### IV. *Contempt*

[28] Father also claims that the trial court abused its discretion by holding him in contempt and ordering him to pay $1,000 toward Mother's attorney fees. A determination of whether a party is in contempt is a matter left to the trial court's sound discretion. *Cowart v. White*, 711 N.E.2d 523, 530-31 (Ind. 1999), *reh'g granted*. We will uphold the trial court's contempt finding absent an abuse of discretion—that is, "if there is no evidence or inferences drawn therefrom that support it." *Id.* at 531. "Contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity." *Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010). A party's "[w]illful disobedience of any lawfully entered court order of which the offender had notice" constitutes indirect contempt of court. *Id.*

Here, the parties' Agreement, which was adopted by the trial court as part of its dissolution decree, specified, in part:

> Neither [Father] nor [Mother] shall attempt, or condone any attempt, directly or indirectly, by any artifice or subterfuge whatsoever, to estrange the [C]hildren from the other party or to injure or impair the mutual love and affection of said [C]hildren and said other party.
>
> . . . The parties shall encourage the [C]hildren to respect both parties and shall not hamper the natural development of the [C]hildren's love and affection for either [Father] or [Mother].

(Appellant's App. p. 5). The trial court then held Father in contempt based on evidence that he

> interfer[ed] with the relationship between Mother and [M.T.] and has helped facilitate[] [M.T.'s] animosity toward Mother.
>
> . . . Most concerning is that Father has interfered with the progress made between Mother and [M.T.] during counseling, by telling [M.T. that] Mother and counselor were conspiring together against Father and secretly recording conversations with counselor.

(Appellant's App. p. 39).

Father disputes that there is sufficient evidence to uphold the trial court's finding of contempt. We disagree. A review of the record establishes that between August of 2011 and March of 2013—during which time M.T. lived with Father—Mother unsuccessfully attempted to exercise parenting time, but M.T. refused. Rather than fostering the relationship between Mother and M.T. or otherwise exercising his parental authority to enforce M.T.'s attendance for parenting time, Father indulged M.T.'s demands. *See MacIntosh v. MacIntosh*, 749 N.E.2d 626, 630 (Ind. Ct. App. 2001) ("'In no event shall a child be

allowed to make the decision on whether scheduled parenting time takes place.'") (quoting Parenting Time G. § I(E)(3)), *trans. denied*.

[31] Furthermore, the trial court appointed Counselor Smith to facilitate the counseling sessions between Mother and M.T. During the hearing on Father's Petition #3, Counselor Smith testified that M.T. and Mother had been making progress in their relationship when, "out of the blue" Father took M.T. to see a child psychologist without Mother's knowledge or consent. (Tr. p. 134). Despite Counselor Smith's warning that the introduction of another therapist would create a "two camp kind of mind set, divisiveness vers[u]s staying the course and trying to work through these difficult tedious pieces[,]" Father continued to take M.T. to see the psychologist. (Tr. p. 136). Counselor Smith further testified that, just prior to the hearing, M.T. arrived at her scheduled session and was laughing and smiling, which "was out of context with anything we were talking about," and she said, "I know you and [Mother] rehearse this session, you rehearse the questions you're going to ask me, I know that." (Tr. pp. 134-35). According to Counselor Smith, M.T. claimed to have heard the information from her Father and her new psychologist and, she "went on and on about how I was biased and . . . I was in her [Mother's] camp." (Tr. p. 136). Counselor Smith also reported his discovery that Father had been recording the therapy sessions, which was "a clear violation of confidentiality." (Tr. p. 137).

[32] Taken together, the evidence overwhelmingly supports the trial court's finding of contempt. Father posits that reversal is warranted because M.T. contradicted Counselor Smith's testimony, but we find that his argument is simply a request

that we reweigh the evidence, which we decline to do. It was well within the trial court's discretion to accord more credibility to the testimony of Counselor Smith. Therefore, we find that the trial court did not abuse its discretion by sanctioning Father for his contemptuous behavior. *See Cowart*, 711 N.E.2d at 533 (approving the award of attorney fees as a remedy for contempt).[2]

## CONCLUSION

[33] Based on the foregoing, we conclude that the trial court acted within its discretion in denying Father's Petition #3 to modify custody and parenting time and in holding Father in contempt. We further conclude that the trial court adequately disposed of the Title IV-D Petition.

[34] Affirmed.

[35] Vaidik, C. J. and Baker, J. concur

---

[2] Father also claims that the trial court abused its discretion in denying his motion to correct error, but after reviewing both Father's twenty-page motion to correct error and his brief, we are unable to decipher a cogent argument. App. R. 46(A)(8)(a). Furthermore, as he did throughout the remainder of his brief, Father has failed to provide any authoritative support for his position. App. R. 46(A)(8)(a). We find that he has waived the issue for appellate review.